

**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

AUG 31 2021 ᴊℕ

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JORGE ALEJANDRO ROJAS

*Plaintiff,*

vs.

PELICAN INVESTMENT HOLDINGS
GROUP, LLC. d/b/a/ AAP,
AUTOGUARD ADVANTAGE
CORPORATION,
DIMENSION SERVICE CORPORATION.

*Defendants.*

Case N

1:21-cv-04663
Judge Jorge L. Alonso
Magistrate Judge Sunil R. Harjani
RANDOM

**COMPLAINT FOR DAMAGES**

**JURY TRIAL REQUESTED**

Plaintiff, Jorge Alejandro Rojas, ("Plaintiff") brings this action against Defendants Pelican

Investment Holdings Group, LLC, doing business as AAP ("AAP"), Autoguard Advantage

Corporation ("Autoguard"), and Dimension Service Corporation ("Dimension"), collectively

"Defendants", and alleges the following:

## **INTRODUCTION**

1. Plaintiff brings this action against Defendants for violations of the Telephone Consumer

   Protection Act ("TCPA"), 47 U.S.C. § 227, its implementing regulations, 47 C.F.R §

   64.1200, the Illinois Telephone Solicitations Act ("ILTSA"), 815 ILCS 413, and the

   Illinois Restricted Call Registry Act, 815 ILCS 402.

## **JURISDICTION AND VENUE**

2. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28

   U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under

   the laws of the United States.

3. This Court has personal jurisdiction over Defendants as they regularly and systemically conduct business in the state of Illinois, and the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

4. This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper under 28 U.S.C. § 1391(b)(2).

**PARTIES**

6. Plaintiff Jorge Alejandro Rojas is a natural person residing in Bolingbrook, IL 60440, and is a citizen of the State of Illinois.

7. Defendant Pelican Investment Holdings Group, LLC ("AAP") is a Delaware Limited Liability Company with its principal place of business, head office, or otherwise valid mailing address at 1300 Old Congress Rd West Palm Beach, FL 33409.

8. Defendant Pelican is the registered owner of the Fictitious Name AAP, and therefore will be referred to as "AAP".

9. Defendant Autoguard Advantage Corporation ("Autoguard") is an Ohio for profit corporation with its principal place of business, head office, or otherwise valid mailing address at 5500 Frantz Road, Suite 120, Dublin, OH 43017.

10. Defendant Dimension Service Corporation ("Dimension") is an Ohio for profit corporation with its principal place of business, head office, or otherwise valid mailing address at 5500 Frantz Road, Suite 120, Dublin, OH 43017.

11. Defendants are each persons as defined by 47 U.S.C. § 153(39).

12. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

13. At all times relevant hereto, Defendants worked in concert.

## FACTUAL ALLEGATIONS

14. At all times relevant hereto, Plaintiff maintained and used a cell phone, with phone number (424) XXX-1582.

15. Plaintiff is the account holder and the customary user of the (424) XXX-1582 phone number.

16. Plaintiff registered that cell phone number on the Federal Do Not Call Registry on or around January 18, 2008. **Exhibit 1.**

17. Plaintiff registered his cell phone number on the Do Not Call list in order to obtain solitude from invasive and harassing telemarketing calls.

18. Defendant AAP is an automobile warranty company that sells to consumers, inter alia, extended automobile warranty plans.

19. Defendant AAP engages in telemarketing in order to solicit business for its warranty plans and services, including plans administered by Defendant Dimension Service Corporation.

20. Beginning around summer 2020 and continuing through at least on or about August 19, 2021, AAP, or an agent for Defendant, placed a series of solicitation calls to Plaintiff in order to sell Plaintiff an extended automobile warranty administered by Dimension.

21. Defendants' phone calls to Plaintiff utilized an automatically generated and/or pre-recorded voice.

22. Defendants' phone calls utilized an Automatic Telephone Dialing System (ATDS) without obtaining Plaintiff's prior express written consent.

23. Plaintiff did not have a prior business relationship with Defendants.

24. Defendant did not have any consent to call Plaintiff.

25. Defendant is not an organization exempt from the TCPA.

26. Defendant's calls to Plaintiff were a "telephone solicitation" as defined by the TCPA.

27. Defendant's calls to Plaintiff were an "unsolicited advertisement" as defined by the TCPA.

28. A list of phone calls Plaintiff has identified as being made by Defendants is below:

   a.  On or about August 18, 2021, from phone number 424-294-4295.

   b.  On or about August 6, 2021, from phone number 408-864-3986.

   c.  On or about July 12, 2021, from phone number 424-287-5615.

   d.  On or about June 16, 2021, from phone number 424-349-1014.

   e.  On or about May 27, 2021, from phone number 415-897-4631.

   f.  On or about April 23, 2021, from phone number 619-493-0373.

   g.  On or about April 23, 2021, from phone number 619-493-0373.

   h.  On or about February 2, 2021, from phone number 424-277-9742.

   i.  On or about November 25, 2020, from phone number 424-383-7088.

   j.  On or about November 9, 2020, from phone number 424-207-1282.

   k.  On or about October 15, 2020, from phone number 213-634-3584.

   l.  On or about September 18, 2020, from phone number 831-901-3768.

   m.  On or about May 11, 2020, from phone number 424-219-5827.

   n.  On or about April 24, 2020, from phone number 424-219-4110.

   o.  On or about March 19, 2020, from phone number 424-219-7422.

29. Upon information and belief, Plaintiff received additional calls from Defendants not included in the above list.

30. Defendants made further efforts to conceal their identity by transmitting a deceptive telephone number with a local area telephone codes to Plaintiff's telephone caller identification ("Neighbor Spoofing"). Neighbor Spoofing is done as a way to deceive the called party into believing the telemarketer is a local person or business, increasing the likelihood that the telemarketing call will be answered.

31. Defendants' aforementioned methods of concealment required Plaintiff to go to the extraordinary step of purchasing the Vehicle Service Contract ("VSC") that Defendants were marketing to identify the source of these unsolicited telemarketing calls. Plaintiff was not provided with any identifying information about Defendants' until he purchased this VSC.

32. When Plaintiff did not answer a phone call and it went to voicemail, the voicemails included a pre-recorded or artificial voice stating things such as " Hi this is __ with the warranty department our records show that your vehicle warranty has expired or is about to expire this is your final courtesy call as you should have received mail press one to be connected to a warranty specialist."

33. The impersonal and generic nature of Defendants calls and voice messages demonstrate that Defendant utilized an Automatic Telephone Dialing System (ATDS) in making the calls.

34. In total, Defendants placed at least 15 calls to Plaintiff.

35. When Plaintiff answered a phone call placed by Defendants, on August 18, 2021, it began with an automated voice setting forth a menu of options after Plaintiff answered a call.

36. In order to ascertain the identity of the party making harassing solicitation calls, Plaintiff continued with the prompts in order to reach an agent.

37. The call was subsequently transferred to an agent of Defendant AAP.

38. The agent in the August 18, 2021 identified herself as Sophia, who after asking Plaintiff for which car he had and the mileage, transferred the call to a Diego.

39. Plaintiff agreed to purchase a policy from Defendant on August 18, 2021, in order to further confirm the identity/identities of the calling party/parties.

40. Defendants stated that it would send Plaintiff a paper copy of the policy via mail.

41. Defendants charged Plaintiff's credit card under the name "AAP." **Exhibit 2.**

42. On August 18, 2021, after the purchase of the warranty, Defendants emailed Plaintiff with a link to a confirmation about the purchase.

43. On August 30, 2021, Plaintiff received correspondence from Defendants with a "Vehicle Service Contract." **Exhibit 3** for selected portions of the contract.

44. The Vehicle Service Contract identifies AAP, as the "Seller."

45. The Vehicle Service Contract identifies MEPCO as the lien-holder, and payments for the policy are made to it.

46. The Vehicle Service Contract identifies Autoguard Advantage Corporation as the Service Contract Provider.

47. The Vehicle Service Contract identifies Dimension Service Corporation as the Administrator on page 4.

48. The Vehicle Service Contract includes a "Payment Plan Agreement" which identifies "PELICANLX" as the Administrator on page 16.

49. Plaintiff presumes "PELICANLX" refers to "Pelican."

50. A search of the Florida Secretary of State website for Fictitious Names of "AAP" reveals Pelican Investment Holdings Group, LLC as its user. **Exhibit 4.**

51. A search of the Florida Secretary of State website also reveals the corporation "Affordable Auto Protection, LLC," registered at the same address as AAP. **Exhibit 5.**

52. Plaintiff alleges that Defendants engage in the practice of having multiple company names with the same address in an attempt to improperly evade TCPA liability.

53. AAP was permitted to market for and bind Defendant Dimension into a vehicle service contract with Plaintiff, and therefore Defendant Dimension is vicariously liable for the acts of Defendant AAP.

54. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that his privacy has been invaded by Defendants.

55. Defendant has a pattern and/or practice of failing to comply with the TCPA, the ILTSA, and the Illinois Restricted Call Registry Act.

56. The foregoing acts and omissions were in violation of the TCPA, the Illinois Telephone Solicitations Act, the Illinois Restricted Call Registry Act

### Direct and Vicarious Liability

57. To the extent Defendants Autoguard and Dimension, outsourced their illegal robocalling to AAP, Autoguard, and Dimension are still liable for calls that violate the TCPA.

58. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective

remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

In re Joint Petition Filed by DISH Network, 28 FCC Rcd. 6574, 6588 (¶ 37) (2013) ("May 2013 FCC Ruling") (internal citations omitted).

59. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. At 6587 n. 107.

60. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. At 6593.

61. The May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. Id. at 6586 (¶ 34).

62. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. Id. at 6587 n.107.

63. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See In re Rules & Regulations Implementing the TCPA, 10 FCC Rcd. 12391, 12397 (1995).

64. Defendants Autoguard and Dimension hired, permitted, and enjoyed the benefits of AAP's mass robocalling.

65. Defendants Autoguard and Dimension acted as principals to AAP's, who acted as their agent.

66. Defendants Autoguard and Dimension are not permitted under the law to outsource and contract their way out of liability by directing and benefitting from AAP's unlawful calls.

67. The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." Id. at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. at 6593 (¶ 46).

68. For the counts identified below, Defendant AAP is directly liable as the party that caused the unlawful calls to be placed.

69. For the counts identified below, Defendants Autoguard and Dimension are vicariously liable for the unlawful calls, as they contracted with AAP, benefitted from AAP's unlawful calls and directed AAP's violative conduct.

70. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the calling has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

71. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to treble damages of up to $1,500.00 for each and every text message sent in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

72. The acts and omissions of Defendants constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 et seq.

73. Plaintiff is also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

74. Plaintiff is also entitled to an award of costs.

75. Defendants' calls were not made for "emergency purposes."

76. Defendants' calls to Plaintiff were made without any prior express written consent.

77. Defendants contacted Plaintiff despite the fact that Plaintiff was on the Do Not Call Registry.

78. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

79. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

80. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

## COUNT 1.
### CALLING A CELLULAR TELEPHONE WITH THE USE OF AN "AUTOMATIC TELEPHONE DIALING SYSTEM" ("ATDS"), 47 U.S.C. § 227(b)(1)(A)(iii)

81. Plaintiff incorporates the foregoing paragraphs as through the same were set forth at length herein.

82. Defendant called Plaintiff's cellular telephone using an "automatic telephone dialing system" as defined by the TCPA on at least fifteen (15) occasions in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

83. Plaintiff was statutorily damaged at least fifteen (15) times under 47 U.S.C. § 227(b)(3)(B) by the Defendant by the telephone calls described above, in the amount of $500.00 for each of these calls.

84. Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(b)(3)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and severally, in an amount of $22,500 plus costs and any other remedy deemed appropriate.

## COUNT 2.

11

CALLING A CELLULAR TELEPHONE WITH THE USE OF "AN ARTIFICIAL OR
PRERECORDED VOICE" ("ATDS") 47 U.S.C. § 227(b)(1)(B)

85. Plaintiff incorporates the foregoing paragraphs as through the same were set forth at length
herein.

86. Defendant called Plaintiff's cellular telephone using an artificial or prerecorded voice to
deliver a message without the Plaintiff's prior express consent on at least fifteen (15)
occasions in violation of 47 U.S.C. § 227(b)(1)(B).

87. Plaintiff was statutorily damaged at least fifteen (15) times under 47 U.S.C. § 227(b)(3)(B)
by the Defendant by the telephone calls described in paragraphs above, in the amount of
$500.00 for each of these calls.

88. Plaintiff was further statutorily damaged because Defendant willfully or knowingly
violated this subsection of the TCPA. Plaintiff requests that the court treble the damage
amount as permitted under U.S.C. § 227(b)(3)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and
against, Defendants, jointly and severally, in an amount of $22,500 plus costs and any other
remedy deemed appropriate.

### COUNT 3.

INITIATING A TELEPHONE SOLICITATION TO A TELEPHONE SUBSCRIBER WHO
HAS REGISTERED HIS NUMBER ON THE DO-NOT-CALL LIST AT LEAST 31 DAYS
PRIOR TO THE TELEPHONE CALL. 47 C.F.R. § 64.1200(c)(2)

89. Plaintiff incorporates the foregoing paragraphs as through the same were set forth at length
herein.

90. Plaintiff's telephone number has been registered on the Federal Do Not Call Registry since
at least 30 days prior to the calls described above.

91. Defendant called Plaintiff's telephone at least fifteen (15) times after Plaintiff's telephone had been registered on the Do Not Call Registry for at least 31 days before Defendant's calls, in violation of 47 C.F.R. § 64.1200(c)(2).

92. Plaintiff was statutorily damaged at least fifteen (15) times under 47 U.S.C. § 227(c)(5)(B) by the Defendant by the telephone calls described above, in the amount of $500.00 for each of the fifteen (15) telephone calls.

93. Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and severally, in an amount of $22,500 plus costs and any other remedy deemed appropriate.

## COUNT 4.
### DEFENDANT VIOLATED THE ILLINOIS TELEPHONE SOLICITATIONS ACT AND RESTRICTED CALL REGISTRY ACT

94. Plaintiff incorporates the foregoing paragraphs as through the same were set forth at length herein.

95. The Illinois Telephone Solicitations Act, inter alia, prohibits the making of a call in a manner which impedes the function of caller ID.

96. The Illinois Restricted Call Registry Act, inter alia, prohibits the making of telephone calls using an automatic dialer without Plaintiff's prior express invitation or permission.

97. The Illinois Restricted Call Registry Act utilizes the same do not call registry as the national do not call list.

98. Section 50 of the Illinois Restricted Call Registry Act provides for statutory damages of $500 per violation of the Act.

99. Defendants violated the Illinois Restricted Call Registry Act with each call they made, and Plaintiff is entitled to $500 per call.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and severally, in an amount of $7,500 plus costs and any other remedy deemed appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of him and against all Defendants, jointly and severally, in an amount to be more fully determined at trial, but at least $75,000.00 as permitted by statute, as follows::

A. All actual damages Plaintiff suffered;

B. Statutory damages of $500.00 per call for each and every violation of 47 U.S.C. § 227(b)(3)(B);

C. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(b)(3)(C).

D. Statutory damages of $500.00 per call for each and every violation of 47 U.S.C. § 227(c)(5)(B);

E. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(c)(5)(C).

F. Statutory damages of $500.00 per call for violation of Illinois Restricted Call Registry Act;

G. All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff;

H. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future

I. Any other relief this Court deems proper.

Respectfully submitted,

DATED: August 31, 2021

Jorge Alejandro Rojas
557 Cambridge Way
Bolingbrook, IL 60440
Rojas.jorge96@gmail.com
424-219-1582
Plaintiff in *Pro Se*

# EXHIBIT 1

6/30/2021                          Gmail - National Do Not Call Registry - Your Registration Is Confirmed

 Gmail                                    Jorge Rojas <rojas.jorge96@gmail.com>

## National Do Not Call Registry - Your Registration Is Confirmed

**Verify@donotcall.gov** <Verify@donotcall.gov>                    Fri, Jun 18, 2021 at 12:15 PM
To: rojas.jorge96@gmail.com

Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 1582 on January 18, 2008. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit https://www.donotcall.gov to register another number or file a complaint against someone violating the Registry.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.

# EXHIBIT 2

8/31/2021                                American Express - Account Activity



ACCOUNT ENDING - 82006                                          CARD MEMBER

Delta SkyMiles® Platinum                                        JORGE ROJAS

| DATE | | DESCRIPTION | AMOUNT |
|---|---|---|---|
| Aug 18 | **AAP**<br>1300 N CONGRESS AVE | **AAP 1300 N CONGRESS 8009418430 FL** | $150.00 |
| | | Will appear on your Aug 20, 2021 statement as AAP 1300 N CONGRESS 8009418430 FL | |
| | WEST PALM BEACH<br>FL<br>33409<br>(800) 941-8430 | CARD<br>JORGE ROJAS | |
| | | DELTA SKYMILES®<br>1X on Other purchases | 150 |
| | | ADDITIONAL INFORMATION<br>31089101231 8009418430 | |

# EXHIBIT 3



**AAP**





**JORGE ROJAS** 08/18/21

Thank you for choosing AAP. We strive to bring you the very best customer experience while under our care. We understand what an important role your vehicle plays in your daily routine and the stress a breakdown can cause to you and your family. AAP plans include a Rental Car, Towing, 24-Hour Roadside Assistance and Concierge Services to help eliminate these stressful times.

Please take the time to carefully review all of your vehicle protection plan information below to ensure its accuracy. If it is not correct, please contact us at 1 (888) 678-0697.

Sincerely,

The AAP Team

### Important Contact Numbers

Roadside: 833-762-5197



**Your membership card**

# VEHICLE SERVICE CONTRACT
## DECLARATION PAGE

**Ultimate Coverage**

Service Contract Number: **MCB1202494**

## PURCHASER INFORMATION

Name: **JORGE ROJAS**

Spouse Name:

Street Address: **557 CAMBRIDGE WAY**

City, State, Zip Code: **BOLINGBROOK, IL 60440**

Telephone: **(424) 219-1582**

Email Address: **rojas.jorge96@gmail.com**

## SELLER INFORMATION

Seller Name: **AAP**

Street Address: **1300 OLD CONGRESS RD**

City, State, Zip Code: **WEST PALM BEACH, FL 33409**

Seller Number:

Telephone: **(888) 678-0697**

## LIENHOLDER INFORMATION

Lienholder Name: **MEPCO**

Street Address: **10 S. LASALLE SUITE 2310**

City, State, Zip Code: **CHICAGO, IL 60603**

Telephone: **(800) 397-6767**

## VEHICLE INFORMATION

Year: **2015**    Make: **CHEVROLET**    Model: **SONIC**

Vehicle Identification Number (17 Digits): **1G1JC6SG3F4161154**

Current Odometer: **49,990**    Vehicle Purchase Price: **NA**

## COVERAGE INFORMATION

Service Contract Purchase Date: **08/18/21**

Deductible: **$100**

Total Months: **48**

Expiration Date: **09/18/25**

Optional Surcharge Coverage:

Mandatory Surcharges:

Service Contract Purchase Price: **$3,665.00**

Total Miles: **100,000**

Expiration Mileage: **101,000**

**NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION. CLAIMS: (833) 762-5197**

PELLNDEC01
MCB1202494

1 of 20

10703_4

## DECLARATION SECTION

The Coverage provided to the **Purchaser** ("You", "Your", "Service Contract Holder") is listed in **Your Service Contract** and is not subject to any verbal representations made by the **Seller** of this **Service Contract.**

This **Service Contract** may run concurrent with and is secondary to any applicable Manufacturer's Warranty.

The **Purchaser** understands and acknowledges that:

1. The information contained in this declaration page, which will be attached to and become part of the **Service Contract**, is accurate and complete to the best of their knowledge.

2. They have reviewed and understand the **Service Contract** and will abide by the terms of the **Service Contract.**

3. This Vehicle **Service Contract** is between the **Purchaser** named above and Autoguard Advantage Corporation, 5500 Frantz Road, Suite 120, Dublin, OH 43017, identified as the Service Contract Provider for this Contract.

4. This **Service Contract** must be received by Dimension Service Corporation, ("Administrator"), located at 5500 Frantz Road, Suite 120, Dublin, OH 43017, from the **Seller,** verified and accepted by the **Administrator** for vehicle eligibility.

5. This Service Contract is not an insurance policy or product warranty, implied or otherwise.

6. **PURCHASE OF THIS SERVICE CONTRACT IS NOT REQUIRED IN ORDER TO LEASE OR PURCHASE A VEHICLE OR OBTAIN VEHICLE FINANCING.**

7. This **Service Contract** contains an arbitration provision which may affect **Your** legal rights. Please review the arbitration section in its entirety to determine whether **Your** legal rights are affected.

**NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION. CLAIMS: (833) 762-5197**

PELLNDEC01
MCB1202494

2 of 20

10703_4

# ULTIMATE COVERAGE

Thank You for choosing Our Ultimate Service Contract! You have selected an Exclusionary Service Contract which will provide You with peace of mind and protection against Mechanical Breakdowns as described herein.

### Customer Service: 833-762-5197

### Claims: 833-762-5197

### Roadside Assistance: 833-762-5197

### IMPORTANT INFORMATION YOU NEED TO KNOW:

Your Service Contract number is located on the Declaration Page of this Service Contract. Please refer to this number in any written or verbal communication, such as requesting information or filing a Claim.

## INSURANCE STATEMENT

Performance to the Purchaser under this Service Contract is guaranteed by an authorized insurance company. If the benefits as described are not provided within sixty (60) days after You provide proof of loss covered by this Agreement, then You may file a Claim with the insurance company. The name and address of the insurance company is: Lexington National Insurance Corporation, P.O. Box 6098, Lutherville, MD 21094, (888) 888-2245.

## DEFINITIONS

This Service Contract contains words and phrases that have specified meaning and appear throughout this Service Contract. Their meanings are listed below:

**Actual Cash Value (ACV)–** Means the National Auto Dealers Association (NADA) published wholesale trade-in value of Your Vehicle immediately prior to the Breakdown taking age, condition and mileage into consideration.

**Breakdown, Mechanical Breakdown** – The inability of a Covered Part to perform the function for which it was designed due to a material defect that is not related to the action or inaction of any non-covered part or outside influence. A gradual reduction in performance commonly referred to as "wear and tear," will be considered a Breakdown when the wear has exceeded the manufacturer's published tolerance. Please refer to the WHAT IS NOT COVERED section for a listing of conditions under which the failure of a Covered Part is not considered a Breakdown.

**Business Use** – Coverage is provided if the Business Use surcharge has been paid as specified on Your Declaration Page. Eligibility is limited to vehicles used for repair work, service work, route work, and delivery work. Coverage is limited to single use drivers.

**Claim(s)** – Means a request made by You for benefits under this Service Contract.

**Coverage Selected** – Means the level of protection You have selected, as shown in the Coverage Information section of the Declaration Page.

**Covered Part(s):** Refers to the mechanical or electrical components described under What is Covered By This Contract section as contained in this Service Contract which are original parts on Your Vehicle at the time of its purchase by You or like replacement parts meeting the manufacturer's specifications.

**Declaration Page:** Means the numbered document attached to this Contract which outlines information regarding You, Your Vehicle, Coverage Selected and other vital information.

**Deductible** – Means the amount You are required to pay, as shown in the Coverage Information section of the Declaration Page, per repair for covered Breakdowns.

**Licensed Repair Facility** – Refers to the entity that is, has or will be performing repairs to Your Vehicle. Such Facility must be licensed and/or approved by the state to perform automotive repairs, must have a tax identification number where required and be capable of performing the needed repairs to Your Vehicle.

## NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION. CLAIMS: (833) 762-5197

PLULT/01 2021
MCB1202494

T 1

10704_2

# PAYMENT PLAN AGREEMENT

**Payment Plan Provider provided by:**
SING For Service, LLC d/b/a Mepco
205 N. Michigan Avenue, Suite 2200, Chicago, IL 60601
Fax 312-853-0535   Telephone: 800-397-6767

## Purchaser:

NAME: JORGE ROJAS
ADDRESS: 557 CAMBRIDGE WAY
CITY, ST, ZIP: BOLINGBROOK, IL 60440          FAX:
PHONE: (424) 219-1582
E-MAIL: rojas.jorge96@gmail.com

CODE: MCB

## Seller:

LEGAL NAME: AAP
DBA:
ADDRESS: 1300 OLD CONGRESS RD
CITY, ST, ZIP: WEST PALM BEACH, FL 33409
PHONE: (888) 678-0697          FAX:
E-MAIL:
SALESPERSON: Diego Meza (gray)

## Payment Plan Terms
*All dollar amounts are in U.S. dollars.*

| | |
|---|---|
| **Total Sales Price** | **$3,665.00** |
| **Down Payment** (Minimum 5% of Total Sales Price) | **$150.00** |
| **Balance of Sales Price** | **$3,515.00** |
| **Number of Payments** | **24** |
| **Amount of Each Payment** (Balance of Sales Price divided by Number of Payments) | **$146.46** |
| **Payment Date (each month)** (First due date no more than 30 days from sale date) | **9/18/2021** |
| **Final Payment Date** (Date of last Payment) | **8/18/2023** |

This Payment Plan Agreement ("Agreement") is between Purchaser and SING For Service, LLC d/b/a Mepco ("MEPCO"), a Seabury Asset Management Company. Purchaser has purchased a service contract ("Contract") from Seller that is issued by PELICANLX ("Administrator"). This Agreement is entered into to enable Purchaser to pay for the Contract pursuant to an installment payment program.

Contract: **ULTIMATE**
Contract No.: **MCB1202494**
Administrator: **PELICANLX**

## Vehicle Information

Contract and Payment Plan Effective Date: 08/18/21
Make: **CHEVROLET**
Model: **SONIC**
Year: **2015**   Odometer: **49,990**
VIN: **1G1JC6SG3F4161154**
Coverage Term: (in months) **48**
Coverage Mileage: (in Miles) **100,000**
Refer to the Contract for the terms and conditions regarding the Contract.
In consideration of Purchaser being afforded the opportunity to pay for the Contract under the installment payment program, the Purchaser and MEPCO acknowledge and agree as follows:

(continued)

7_11

MCB1202494



Payment Plan Agreement Page 2

Purchaser has paid to Seller for its account in cash the down payment disclosed under "Payment Plan Terms" towards the Total Sales Price of the Contract. The Balance of Sales Price shall be paid by Purchaser to MEPCO. Subject to the Cancellation provisions on Page 3 hereof, Purchaser promises to pay MEPCO, the Balance of Sales Price in accordance with the payment method selected by Purchaser from the options set forth below.

**Payment Option 1: Authorization for Credit Card Payment**

The Balance of Sales Price may be paid by Purchaser through, and Purchaser hereby authorizes MEPCO to make, the applicable number of consecutive monthly charges to Purchaser's credit card account listed below, in the amounts and on the dates disclosed under the Payment Plan Terms, until such time as the Balance of Sales Price, together with the applicable charges described on page 3 hereof (the "Applicable Charges"), are fully paid, or until such time as MEPCO has received written notification of termination ("Credit Card Payment Termination Notice") from Purchaser in time to allow reasonable opportunity to act on it.

| \*\*\*\*-\*\*\*\*-\*\*\*\*-2006 | 08/25 | Amx |
|---|---|---|
| Credit Card Number | Expiration Date (MM/YY) | Type of Card (MC, Visa, Amex, Discover) |

I authorize charges to my credit card account for payment of the Balance of Sales Price together with all Applicable Charges in accordance with this Agreement.

**Payment Option 2: Authorization for Bank Account Direct Debit**

The Balance of Sales Price may be paid by Purchaser through, and Purchaser hereby authorizes MEPCO to instruct Purchaser's financial institution described below to make, the applicable number of consecutive monthly payments in the amounts and on the dates disclosed under Payment Plan Terms, from the account listed below, by electronic automatic debit of Purchaser's checking or savings account. This authority will remain in effect until such time as the Balance of Sales Price, together with all applicable Charges, are fully paid, or until such time as MEPCO has received written notification of termination ("Bank Account Direct Debit Termination Notice") from Purchaser in time to allow reasonable opportunity to act on it.

| | | ☐ Checking |
|---|---|---|
| Name of Financial Institution | Routing Number (Must be 9 digits long) | Account Number ☐ Savings |

I authorize charges to my bank account for the payment of the Balance of Sales Price together with all Applicable Charges in accordance with this Agreement.

**Payment Option 3: Monthly Bill**

The Balance of Sales Price may be paid directly by Purchaser in accordance with the Payment Plan Terms listed above. Purchaser shall receive a monthly bill and shall make payment on or before the Payment Date of each consecutive month until the Balance of Sales Price, together with all Applicable Charges, are fully paid, or until such time as MEPCO has received written notification of termination ("Monthly Bill Termination Notice") from Purchaser. Purchaser shall send such payments to MEPCO at such address as MEPCO provides to Purchaser.

PURCHASER SHALL HAVE THE RIGHT, AT ANY TIME, TO CANCEL THE CONTRACT BY NOTICE TO MEPCO ("Termination Notice") OR BY NONPAYMENT. PURCHASER SHALL HAVE NO OBLIGATION TO MAKE ANY INSTALLMENT PAYMENTS AFTER CANCELLATION. Subject to the Cancellation provisions on Page 2 hereof, unless MEPCO shall previously have received a Bill Termination Notice, (i) a late payment fee may be imposed in the amount of the lesser of 5% of the late payment or $5.00 in respect of any payment not received by MEPCO within five days of the scheduled Payment Date therefor (the "Late Charge"), and (ii) in the event that any scheduled payment is not made on or before the scheduled Payment Date, as provided in the Payment Plan Terms above, MEPCO is authorized by Purchaser (without notice thereof to Purchaser) to direct Administrator or Seller to cancel Purchaser's Contract and this Agreement at any time for nonpayment. Purchaser hereby assigns to MEPCO all of Purchaser's right, title and interest in and to the Contract, including Purchaser's rights to cancel the Contract, receive all unearned and refund amounts under the Contract and Purchaser's right to make a direct claim for indemnity against the Insurance Company. Purchaser represents to MEPCO that Purchaser's decision to purchase the Contract from Seller under the payment program did not result in Seller charging Purchaser a different Total Sales Price for the Contract than Purchaser would have paid

See page 3 for additional terms and conditions.

MCB1202494

7_11

# EXHIBIT 4

8/31/2021                                    sunbiz.org - Florida Department of State

FLORIDA DEPARTMENT of STATE                                    DIVISION of CORPORATIONS



Previous on List     Next on List     Return to List              Fictitious Name Search

**No Filing History**                                                    Submit

# Fictitious Name Detail

### Fictitious Name

AAP

### Filing Information

| | |
|---|---|
| **Registration Number** | G21000024125 |
| **Status** | ACTIVE |
| **Filed Date** | 02/19/2021 |
| **Expiration Date** | 12/31/2026 |
| **Current Owners** | 1 |
| **County** | PALM BEACH |
| **Total Pages** | 1 |
| **Events Filed** | NONE |
| **FEI/EIN Number** | 85-3779817 |

### Mailing Address

1300 N CONGRESS AVENUE
WEST PALM BEACH, FL 33409

### Owner Information

PELICAN INVESTMENT HOLDINGS GROUP, LLC
1300 N CONGRESS AVENUE
WEST PALM BEACH, FL 33409
**FEI/EIN Number:** 85-3779817
**Document Number:** M21000001080

### Document Images

02/19/2021 -- REGISTRATION     [ View image in PDF format ]

---

Previous on List     Next on List     Return to List              Fictitious Name Search

**No Filing History**                                                    Submit

Florida Department of State, Division of Corporations

# EXHIBIT 5

8/31/2021                                                                      Detail by Entity Name



Department of State  /  Division of Corporations  /  Search Records  /  Search by Entity Name  /

## Detail by Entity Name

Florida Limited Liability Company
AFFORDABLE AUTO PROTECTION, LLC

**Filing Information**

| | |
|---|---|
| **Document Number** | L20000232535 |
| **FEI/EIN Number** | 86-2888397 |
| **Date Filed** | 08/03/2020 |
| **State** | FL |
| **Status** | ACTIVE |

**Principal Address**

1300 Old Congress Rd
WEST PALM BEACH, FL 33409

Changed: 04/06/2021

**Mailing Address**

1300 Old Congress Rd
WEST PALM BEACH, FL 33409

Changed: 04/06/2021

**Registered Agent Name & Address**

RENNY, GUS
1300 Old Congress Rd
WEST PALM BEACH, FL 33409

Address Changed: 04/06/2021

**Authorized Person(s) Detail**

**Name & Address**

Title MGR

RENNY, GUS
1300 Old Congress Rd
WEST PALM BEACH, FL 33409

**Annual Reports**

| **Report Year** | **Filed Date** |
|---|---|
| 2021 | 04/06/2021 |

8/31/2021                                                                    Detail by Entity Name

**Document Images**

| 04/06/2021 -- ANNUAL REPORT | View image in PDF format |
| 08/03/2020 -- Florida Limited Liability | View image in PDF format |

Florida Department of State, Division of Corporations