## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JORGE ALEJANDRO ROJAS, | Case No. 1:21-cv-04663 |
| *Plaintiff,* | Judge Jorge L. Alonso |
| vs. | **FIRST AMENDED COMPLAINT FOR DAMAGES** |
| PELICAN INVESTMENT HOLDINGS GROUP, LLC. d/b/a/ AAP, AUTOGUARD ADVANTAGE CORPORATION, DIMENSION SERVICE CORPORATION, TRINITY AUTO SERVICES, LLC., AUTO KNIGHT MOTOR CLUB, INC., | **JURY TRIAL REQUESTED** |
| *Defendants.* | |

Plaintiff, Jorge Alejandro Rojas, ("Plaintiff") files this amended complaint[1] against Defendants Pelican Investment Holdings Group, LLC, doing business as AAP ("AAP"), Autoguard Advantage Corporation ("Autoguard"), Dimension Service Corporation ("Dimension"), Trinity Auto Services, LLC. ("Trinity"), and Auto Knight Motor Club, Inc. ("Knight"), collectively "Defendants", and alleges the following:

### INTRODUCTION

1. Plaintiff brings this action against Defendants for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, its implementing regulations, 47 C.F.R § 64.1200, the Illinois Telephone Solicitations Act ("ILTSA"), 815 ILCS 413, the Illinois Restricted Call Registry Act, 815 ILCS 402, and the Illinois Automatic Telephone Dialers Act, 815 ILCS 305.

---

[1] Plaintiff files this Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B). Defendants Trinity and Knight are new parties to this action.

**JURISDICTION AND VENUE**

2. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States.

3. This Court has personal jurisdiction over Defendants as they regularly and systemically conduct business in the state of Illinois, and the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

4. This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper under 28 U.S.C. § 1391(b)(2).

**PARTIES**

6. Plaintiff Jorge Alejandro Rojas is a natural person residing in Bolingbrook, IL 60440, and is a citizen of the State of Illinois.

7. Defendant Pelican Investment Holdings Group, LLC ("AAP") is a Delaware Limited Liability Company with its principal place of business, head office, or otherwise valid mailing address at 1300 Old Congress Rd, West Palm Beach, FL 33409.

8. Defendant Pelican is the registered owner of the Fictitious Name AAP, and therefore will be referred to as "AAP".

9. Defendant Autoguard Advantage Corporation ("Autoguard") is an Ohio for profit corporation with its principal place of business, head office, or otherwise valid mailing address at 5500 Frantz Road, Suite 120, Dublin, OH 43017.

10. Defendant Dimension Service Corporation ("Dimension") is an Ohio for profit corporation with its principal place of business, head office, or otherwise valid mailing address at 5500 Frantz Road, Suite 120, Dublin, OH 43017.

2

11.  Defendant Trinity Auto Services, LLC., ("Trinity") is a California Domestic LLC, with an entity address of 1115 Charleston Street, Costa Mesa, CA 92626.

12.  Defendant Auto Knight Motor Club, Inc., ("Knight") is a California Domestic Stock entity, with an entity address of 4640 Admiralty Way, 5th Floor, Marina Del Ray, CA 90292, and a mailing address of 10751 Deerwood Park Blvd Suite 200, Jacksonville, FL 32256.

13.  Defendants are each persons as defined by 47 U.S.C. § 153(39).

14.  Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

15.  At all times relevant hereto, Defendants worked in concert.

## TCPA BACKGROUND

16.  The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using … an artificial or prerecorded voice …." *See* 47 U.S.C. §§ 227 (b)(1)(A)(iii), (b)(2).

17.  According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

18.  While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

19. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

20. In Illinois, the Automatic Telephone Dialers Act ("ATDA") prohibits "play[ing] a prerecorded message placed by an autodialer without the consent of the called party". 815 ILCS 305/30(b).

## FACTUAL ALLEGATIONS

21. At all times relevant hereto, Plaintiff maintained and used a cell phone, with phone number (424) XXX-1582.

22. Plaintiff is the account holder and the customary user of the (424) XXX-1582 phone number.

23. Plaintiff registered that cell phone number on the Federal Do Not Call Registry on or around January 18, 2008. **Exhibit 1.**

24. Plaintiff registered his cell phone number on the Do Not Call list in order to obtain solitude from invasive and harassing telemarketing calls.

25. Defendants AAP and Trinity are automobile warranty companies that sell to consumers, inter alia, extended automobile warranty or service plans.

26. Defendant AAP and Trinity engage in telemarketing in order to solicit business for its warranty plans and services, including plans administered by Defendants Dimension Service Corporation and Knight.

27. Defendant callers exercised control over their employees, contractors, or agents, in the course of calling leads in an attempt to convert them into customers.

28. Beginning around summer 2020 and continuing through at least on or about October 20, 2021, AAP, or Trinity, or an agent for a Defendant, placed a series of solicitation calls to Plaintiff in order to sell Plaintiff an extended automobile warranty administered by Dimension and/or Knight.

29. Defendants' phone calls to Plaintiff utilized an automatically generated and/or pre-recorded voice without obtaining Plaintiff's prior express written consent.

30. Defendants' phone calls utilized an Automatic Telephone Dialing System (ATDS) without obtaining Plaintiff's prior express written consent.

31. Plaintiff did not have a prior business relationship with Defendants.

32. Defendants did not have any consent to call Plaintiff.

33. Defendants are not an organization exempt from the TCPA.

34. Defendant's calls to Plaintiff were a "telephone solicitation" as defined by the TCPA.

35. Defendant's calls to Plaintiff were an "unsolicited advertisement" as defined by the TCPA.

36.  **Call 1.** On or about August 18, 2021, Plaintiff received a solicitation from one or more Defendants, or its agents, from phone number 424-294-4295. Plaintiff answered this call. As explained more fully below, Plaintiff purchased a policy during this call.

37.  **Call 2.** On or about August 6, 2021, at 3:53 PM Chicago time, Plaintiff received a solicitation from one or more Defendants, or its agents, from phone number 408-864-3986. Plaintiff did not answer the phone, and the voicemail left by the caller was[2]:

"Press one to be connected to a warranty specialist warranties our mileage and time sensitive they must be extended before your vehicle reach a certain mileage again press one to be connected to a warranty specialist hi this is ___ with the warranty department our records show that your vehicle warranty has expired or is about to expire this is your final courtesy call as you should've received mail press one to be connected to a warranty specialist warranties our mileage and time sensitive they must be extended before your vehicle reach a certain mileage again press one to be connected to a warranty specialist"

38.  Plaintiff attempted to call back 408-864-3986 but was unable to, as the number is not in service.

39.  **Call 3.** On or about June 16, 2021, at 2:33 PM Chicago time, Plaintiff received a solicitation from one or more Defendants, or its agents, from phone number 424-349-1014. Plaintiff did not answer the phone, and the voicemail left by the caller was:

"Hi We have not gotten a response we are giving you a final courtesy call before we close out your file press two to be put on our do not call list or press one to speak to someone about possibly extending __ reinstating your car is warranty again press one to speak to a warranty specialist…"

---

[2] The voicemail transcriptions provided in this Amended Complaint are from Plaintiff's voicemail system, and may contain errors in transcription or omissions. They are provided for the purpose of demonstrating that the calls made were substantially similar in nature.

40. Plaintiff attempted to call back 424-349-1014 but was unable to, as the number is not in service.

41. **Call 4.** On or about May 27, 2021, at 4:54 PM Chicago time, Plaintiff received a solicitation from one or more Defendants, or its agents, from phone number 415-897-4631. Plaintiff did not answer the phone, and the voicemail left by the caller was:

"_____ cut off and this is a courtesy call to renew your warranty before we close the file if you were interested in renewing your auto warranty now please press five now or press nine to be removed from our list hi this is Susie calling with the vehicle service department we are calling about your vehicles manufactures warranty we sent you several notices in the mail that you have yet to extend your warranty pass the factory cut off and this is a courtesy call to renew your warranty before we close the file if you were interested in renewing your auto warranty now please press five now or press nine to be removed from our list"

42. Plaintiff attempted to call back 415-897-4631 but was connected to a "Harvest Market." Plaintiff alleges this is part of Defendants scheme of tampering with its caller ID in order to obfuscate its identity and commit violations of telemarketing laws.

43. **Call 5.** On or about April 23, 2021, at 12:46 PM Chicago time, Plaintiff received a solicitation from one or more Defendants, or its agents, from phone number 619-493-0373. Plaintiff did not answer the phone, and the voicemail left by the caller was:

"Cut off and this is a courtesy call to renew your warranty before we close the file if you were interested in renewing your auto warranty now please press five now or press nine to be removed from our list hi this is Susie calling with the vehicle service department we are calling about your vehicles manufactures warranty we sent you several notices in the mail that you have yet to extend your warranty pass the factory cut off and this is a courtesy call to renew

your warranty before we close the file if you were interested in renewing your auto warranty now please press five now or press nine to be removed from our list"

44. Plaintiff attempted to call back 619-493-0373 but received a message the call was rejected.

45. **Call 6.** On or about February 2, 2021, at 12:42 PM Chicago time, Plaintiff received a solicitation from one or more Defendants, or its agents, from phone number 424-277-9742. Plaintiff did not answer the phone, and the voicemail left by the caller was:

"___ cars extended warranty since we have not gotten a response we are giving you a final courtesy call before we close out your file press two to be removed and put on our do not call list press one to speak with someone about possibly extending or reinstating your car ___ warranty again press one to speak with a warranty specialist…"

46. Plaintiff attempted to call back 424-277-9742 but was unable to, as the number is not in service.

47. **Call 7.** On or about December 22, 2020, at 11:22 AM Chicago time, Plaintiff received a solicitation from one or more Defendants, or its agents, from phone number 831-372-2320. Plaintiff did not answer the phone, and the voicemail left by the caller was:

"___ cars extended warranty since we have not gotten a response we are giving you a final courtesy call before we close out your file press two to be removed and put on our do not call list press one to speak with someone about possibly extending or reinstating your car ___ warranty again press one to speak with a warranty specialist. Hi this is Susie calling with the vehicle service department…"

48. Plaintiff attempted to call back 831-372-2320 but was unable to, as the number is not in service.

49. **Call 8.** On or about December 11, 2020, at 12:40 PM Chicago time, Plaintiff received a solicitation from one or more Defendants, or its agents, from phone number 559-562-7051. Plaintiff did not answer the phone, and the voicemail left by the caller was:

"Vehicle service department we are calling about your vehicles manufactures warranty we sent you several notices in the mail that you have yet to extend your warranty pass the factory cut off and this is a courtesy call to renew your warranty before we close the file if you were interested in renewing your auto warranty now please press five now or press nine to be removed from our list. Hi this is Susie calling with…"

50. Plaintiff attempted to call back 559-562-7051 but was unable to, as the number is not in service.

51. **Call 9.** On or about November 25, 2020, at 11:17 AM Chicago time, Plaintiff received a solicitation from one or more Defendants, or its agents, from phone number 424-383-7088. Plaintiff did not answer the phone, and the voicemail left by the caller was:

"_____ in the mail about your car is extended warranty since we have not gotten a response we are giving you a final courtesy call before we close out your file press two to be removed and put on our do not call list press one to speak with someone about possibly extending or reinstating your car is warranty again press one to speak with a warranty specialist or car 800 number 8333041447 USD 456…"

52. Plaintiff attempted to call back 424-383-7088 but was unable to, as the number is not in service.

53. **Call 10.** On or about November 9, 2020, at 11:10 AM Chicago time, Plaintiff received a solicitation from one or more Defendants, or its agents, from phone number 424-207-1282. Plaintiff did not answer the phone, and the voicemail left by the caller was:

"_____ in the mail about your car is extended warranty since we have not gotten a response we are giving you a final courtesy call before we close out your file press two to be removed and put on our do not call list press one to speak with someone about possibly extending or reinstating your car is warranty again press one to speak with a warranty specialist or car 800 number 8333041447 USD 456…"

54. Plaintiff attempted to call back 424-207-1282 but was unable to, as the number is not in service.

55. **Call 11.** On or about October 15, 2020, at 3:16 PM Chicago time, Plaintiff received a solicitation from one or more Defendants, or its agents, from phone number 213-634-3584. Plaintiff did not answer the phone, and the voicemail left by the caller was:

"_____ ____ ___ factory cut off and this is a courtesy call to renew your warranty before we close the file if you were interested in renewing your auto warranty now please press five now or press nine to be removed from our list. Hi this is Susie calling with the vehicle service department…"

56. Plaintiff attempted to call back 213-634-3584 but was unable to, as the number is not in service.

57. **Call 12.** On or about September 18, 2020, at 11:00 AM Chicago time, Plaintiff received a solicitation from one or more Defendants, or its agents, from phone number 831-901-3768. Plaintiff did not answer the phone, and the voicemail left by the caller:

"Received mail press one to be connected to a warranty specialist warranties are mileage and time sensitive they must be extended before your vehicle reach a certain mileage again press one to be connected to a warranty specialist. Hi this is Ann from the warranty department…"

58. Plaintiff attempted to call back 831-901-3768 but was forwarded immediately to a voicemail.

59. **Call 13.** On or about August 24, 2020, at 11:17 AM Chicago time, Plaintiff received a solicitation from one or more Defendants, or its agents, from phone number 707-753-7497. Plaintiff did not answer the phone, and the voicemail left by the caller:

"Should've received mail press one to be connected to a warranty specialist warrantees are mileage and time sensitive they must be extended before your vehicle reaches certain mileage again press one to be connected to a warranty specialist. Hi this is Ann from the warranty department our records show that …"

60. Plaintiff attempted to call back 707-753-7497 but was unable to, as the number is not in service.

61. **Call 14.** On or about May 11, 2020, at 10:17 AM Chicago time, Plaintiff received a solicitation from one or more Defendants, or its agents, from phone number 424-219-5827. Plaintiff did not answer the phone, and the voicemail left by the caller:

"_____ courtesy call as you should've received mail press one to be connected to a warranty specialist _____ our mileage and time sensitive they must be extended before your vehicle _____ certain mileage again press one to be connected to a warranty specialist hi this is Dan with the warranty department our _____ show that your vehicle warranty has expired or is about to expire this is your final courtesy call as you should've received mail press one to be connected to a warranty specialist Ortiz our mileage and time sensitive they must be extended

11

before your vehicle reach a certain mileage again press one to be connected to a warranty specialist …"

62. Plaintiff attempted to call back 424-219-5827 but was unable to, as the number is not in service.

63. **Call 15.** On or about April 24, 2020, at 2:41 PM Chicago time, Plaintiff received a solicitation from one or more Defendants, or its agents, from phone number 424-219-4110. Plaintiff did not answer the phone, and the voicemail left by the caller:

"We still have not received a response to the final notice that ____ ____ _____ to your residence _____ are time sensitive they must be extended before your vehicle reaches a certain mileage don't make the costly mistake and driving your vehicle without it press one now to speak to a warranty specialist and ask about our 0% financing press three to close your warranty coverage and stuff these courtesy calls this is an urgent notification about your vehicle manufacturer warranty coverage your vehicle manufacture warranty may have expired or is about to expire we still have not received a response to the final notice"

64. Plaintiff attempted to call back 424-219-5827 and reached an individual who had no knowledge of having made a telephone call.

65. **Call 16.** On or about March 19, 2020, at 11:59 AM Chicago time, Plaintiff received a solicitation from one or more Defendants, or its agents, from phone number 424-219-7422. Plaintiff did not answer the phone, and the voicemail left by the caller:

"If you have not responded to this notification it's not too late please don't make the mistake of driving without a warranty you are still eligible to reactivate warranty coverage this is the final call before we close the file press one to speak with a representative now about your vehicle this is the second notice that the factory warranty on your vehicle may have expired

and should be reactivated to protect you against the cost of repairs if you have not responded to this notification it's not too late please don't make the mistake of driving without a warranty you are still eligible to reactivate warranty coverage this is the final call before we close the file"

66. Each of the telephone calls identified above, is similar in nature to the calls received by Plaintiff in which he actually signed up for services with from Defendant. Plaintiff therefore alleges that the above calls were also from named Defendants. Plaintiff alleges they are from a named Defendant based on the fact that they have the same or substantially similar automated/pre-recorded voice script as that which Defendant called Plaintiff using when he answered and purchased services.

67. Plaintiff's failed callback attempts demonstrate that Defendants are acting in a willful and knowingly nature, attempting to obfuscate their true identity, in an attempt to evade TCPA liability. Defendants are tampering with caller ID, in violation of Section 15 of the Illinois Telephone Solicitations Act.

68. Upon information and belief, Plaintiff received additional calls from Defendants not included in the above list.

69. Defendants made further efforts to conceal their identity by transmitting a deceptive telephone number with a local area telephone codes to Plaintiff's telephone caller identification ("Neighbor Spoofing"). Neighbor Spoofing is done as a way to deceive the called party into believing the telemarketer is a local person or business, increasing the likelihood that the telemarketing call will be answered.

70. Defendants' aforementioned methods of concealment required Plaintiff to go to the extraordinary step of purchasing the Vehicle Service Contract ("VSC") that Defendants

were marketing to identify the source of these unsolicited telemarketing calls. Plaintiff was not provided with any identifying information about Defendants' until he purchased this VSC.

71. The impersonal and generic nature of Defendants calls and voice messages demonstrate that Defendant utilized an Automatic Telephone Dialing System (ATDS) and/or a pre-recorded voice in making the calls.

72. When Plaintiff answered a phone call placed by Defendants, on August 18, 2021, it began with an automated voice setting forth a menu of options after Plaintiff answered a call.

73. In order to ascertain the identity of the party making harassing solicitation calls, Plaintiff continued with the prompts in order to reach an agent.

74. The call was subsequently transferred to an agent of Defendant AAP.

75. The agent in the August 18, 2021 identified herself as Sophia, who after asking Plaintiff for which car he had and the mileage, transferred the call to a Diego.

76. Plaintiff agreed to purchase a policy from Defendant on August 18, 2021, in order to further confirm the identity/identities of the calling party/parties.

77. Defendants stated that it would send Plaintiff a paper copy of the policy via mail.

78. Defendants charged Plaintiff's credit card under the name "AAP." **Exhibit 2.**

79. Defendants charged the VSC as being "AAP" to Plaintiff's credit card. Defendants' charge included an entity address of 1300 North Congress Ave, West Palm Beach, FL 33409, and phone of (800) 941-8430.

80. A Google search of the phone number listed on the AAP credit card transaction identifies results which include the website of Assured Auto Group, Inc's page, as well as Affordable Car Cure, both entities owned by Renny.

81. Plaintiff alleges that to the extent that named Defendants' in this action were not the actual callers, that one of their alter egos, as in one of the other companies Mr. Renny owns, is liable. For example, a search of the AAP phone number reveals other warranty companies that are owned by Mr. Renny, who may have been the direct caller. Failure to disregard the confusing corporate structure in place would result in fraud or injustice because the structure is designed, at least in part, to obfuscate and limit liability and exposure in TCPA cases.

82. On August 18, 2021, after the purchase of the warranty, Defendants emailed Plaintiff with a link to a confirmation about the purchase.

83. On August 18, 2021, after the purchase of the warranty, Defendants texted Plaintiff at 3:08 PM Chicago time, from 888-214-4234, with a message of "Thank you for becoming a part of the AAP Family click https://policy-hub.com/newwelcome.php?cid=14242191582 for your Policy Info. Reply stop to unsubscribe."

84. On August 30, 2021, Plaintiff received correspondence from Defendants with a "Vehicle Service Contract." **Exhibit 3** for selected portions of the contract.

85. The August 30, 2021 correspondence is dated August 18, 2021, and will be referred to as the "August 18, 2021 Vehicle Service Contract".

86. The August 18, 2021 Vehicle Service Contract identifies AAP, as the "Seller."

87. The August 18, 2021 Vehicle Service Contract identifies MEPCO as the lien-holder, and payments for the policy are made to it.

88. The August 18, 2021 Vehicle Service Contract identifies Autoguard Advantage Corporation as the Service Contract Provider.

89. The August 18, 2021 Vehicle Service Contract identifies Dimension Service Corporation as the Administrator on page 4.

90. The August 18, 2021 Vehicle Service Contract includes a "Payment Plan Agreement" which identifies "PELICANLX" as the Administrator on page 16.

91. Plaintiff presumes "PELICANLX" refers to "Pelican."

92. A search of the Florida Secretary of State website for Fictitious Names of "AAP" reveals Pelican Investment Holdings Group, LLC as its user. **Exhibit 4.**

93. A search of the Florida Secretary of State website also reveals the corporation "Affordable Auto Protection, LLC," registered at the same address as AAP. **Exhibit 5.**

94. Plaintiff alleges that Defendants engage in the practice of having multiple company names with the same address in an attempt to improperly evade TCPA liability.

95. **Call 17.** On or about October 20, 2021, at 10:33 AM Chicago time, Plaintiff received a telephone call from 714-922-8277.

96. In total, Plaintiff alleges Defendants have made at least 17 calls to Plaintiff. These calls were all pre-recorded or automatically generated, and/or utilized an automatic telephone dialing system, and all made after Plaintiff was registered on the do-not-call registry.

97. During the October 20th call, Plaintiff was told by an automated voice that a Vanessa was on the line, and that it was from the "Vehicle Service Center," and said that he had to press 1 to connect to an agent.

98. When Plaintiff pressed 1, Plaintiff was connected to the "Warranty Division," where he was asked the vehicle, his zip code, and the mileage, and then transferred to a "Sarah" who was the "Coverage Specialist."

16

99. Defendants' aforementioned methods of concealment required Plaintiff to go to the extraordinary step of purchasing the VSC that Defendants were marketing to identify the source of these unsolicited telemarketing calls. Plaintiff was not provided with any identifying information about Defendants' until he purchased the VSCs.

100. The October 20, 2021 phone call lasted 16 minutes, meaning it ended at or around 10:49 AM.

101. Defendants charged the VSC as being "Trinity Automotive Services" to Plaintiff's credit card. Defendants charge included an entity address of 1041 West 18th St Ste A-203 Costa Mesa, CA 92627, and phone of (800) 938-0104. **Exhibit 6.**

102. Defendants submitted the credit card purchase at around 10:34 AM Chicago time.

103. Right after purchasing the October 20, 2021 VSC, at 10:39 AM Chicago time, Plaintiff received a text, from 561-333-1005, stating "Thank you for becoming a part of the AAP Family click https://policy-hub.com/newwelcome.php?cid=14242191582 for your Policy Info. Reply stop to unsubscribe". **Exhibit 7.**

104. The October 20, 2021 text and the associated document which it links to, demonstrates that Defendants are all working in concert and that Defendant AAP was also involved in the October 20, 2021 transaction. **Exhibit 8.**

105. On October 20, 2021 Plaintiff received an e-mail from Trinity with a link to a confirmation of the policy. The file name of the download is "AAP - Trinity - 4242191582 – 4.pdf." This further demonstrates that AAP and Trinity are acting on behalf of one another in a confusing corporate structure. **Exhibit 9.**

106. A Google search of the phone number listed on the Trinity credit card transaction identifies a website of https://www.guardianautoshield.com.

107. On October 26, 2021, Plaintiff received an email from MEPCO, "the company that will process your monthly payments for this contract," which stated as a subject line "Important information regarding your Mepco Payment Plan with TRINITY-PELICAN." **Exhibit 10.**

108. Based on the above, Plaintiff alleges that Trinity and Pelican, and therefore AAP, are one and the same entity or affiliated with one another.

109. On or about October 29, 2021, Plaintiff received the agreement he entered into with Defendants during the October 20, 2021. **Exhibit 11** for selected portions.

110. The October 20, 2021 agreement identifies Defendant Trinity Auto Services LLC as the "Seller (Club Agent)."

111. The October 20, 2021 agreement identifies Defendant Auto Knight Motor Club Inc. as the "Club" or entity that provides the "services" under the agreement.

112. AAP and Trinity were permitted to market for, and actually bind Defendants Dimension and Knight into a vehicle service contract with Plaintiff, and therefore Defendants Dimension and Knight are vicariously liable for the acts of Defendant AAP and Trinity.

113. Defendants Dimension, Knight, and Autoguard knew about the illegal calls being made, and did nothing to stop them from happening. Defendants AAP and Trinity both called Plaintiff to sell Knight, Dimension, and Autoguard policies, and had the authority to bind the same. An agency relationship exists as demonstrated through the use of a contract which has the name of other companies in a business relationship.

114. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that his privacy has been invaded by Defendants.

115. Defendant has a pattern and/or practice of failing to comply with the TCPA, the ILTSA, the Illinois Restricted Call Registry Act, and the Illinois Automatic Telephone Dialers Act.

116. The foregoing acts and omissions were in violation of the TCPA, the Illinois Telephone Solicitations Act, the Illinois Restricted Call Registry Act, and the Illinois Automatic Telephone Dialers Act.

**<u>Direct and Vicarious Liability</u>**

117. Gus Renny, the owner of AAP, owns not just AAP, but numerous other car warranty companies, which utilize different names in order to prevent liability. These entities are used specifically to limit each other's TCPA liability. For example, the websites for National Car Cure (nationalcarcure.com) and Affordable Car Cure (affordablecarcure.com) are virtually identical. A search of the Florida Secretary of State Business directory demonstrates that all these entities are owned by Renny.

118. According to other lawsuits, other companies owned by Renny have dissolved when faced with a TCPA suit. *See Rowan v. Affordable Car Cure, et. al,* 9:20-cv-82168 (D. S. Fl.).

119. To the extent Defendants Autoguard, Knight, and Dimension, outsourced their illegal robocalling to AAP, and/or Trinity, Autoguard, Knight, and Dimension are still liable for calls that violate the TCPA.

120. By continuing to engage in and benefit from business with Mr. Renny, including through AAP and Trinity, Pelican, Knight, and Autoguard ratifies the unlawful telemarketing that Renny and his entities engage in to sell their extended car warranties.

121. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective

remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

In re Joint Petition Filed by DISH Network, 28 FCC Rcd. 6574, 6588 (¶ 37) (2013) ("May 2013 FCC Ruling") (internal citations omitted).

122. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. At 6587 n. 107.

123. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. At 6593.

124. The May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. Id. at 6586 (¶ 34).

125. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. Id. at 6587 n.107.

126. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See In re Rules & Regulations Implementing the TCPA, 10 FCC Rcd. 12391, 12397 (1995).

127. Defendants Autoguard, Knight, and Dimension hired, permitted, and enjoyed the benefits of AAP's and Trinity's mass robocalling.

128. Defendants Autoguard, Knight, and Dimension acted as principals to AAP and Trinity, who acted as their agent.

129. Defendants Autoguard, Knight, and Dimension are not permitted under the law to outsource and contract their way out of liability by directing and benefitting from AAP's and Trinity's unlawful calls.

130. Defendants Autoguard, Dimension, and Knight should be aware of the illegal telemarketing that has been associated with Mr. Renny and his entities over the last several years due to complaints filed online and legally, but despite these facts, these entities continue to do business with Mr. Renny and his affiliated entities in order to sell extended car warranties.

131. By continuing to engage in and benefit from business with Mr. Renny, including AAP, Autoguard, Dimension, and Knight ratifies the unlawful telemarketing that Mr. Renny and his entities engage in to sell their extended warranties.

132. The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." Id. at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. at 6593 (¶ 46).

133. For the counts identified below, Defendant AAP and Trinity are directly liable as the party that caused the unlawful calls to be placed.

134. For the counts identified below, Defendants Autoguard, Knight, and Dimension are vicariously liable for the unlawful calls, as they contracted with AAP and Trinity, benefitted from AAP's and Trinity's unlawful calls and directed AAP's and Trinity's violative conduct.

135. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the calling has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

136. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to treble damages of up to $1,500.00 for each and every text message sent in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

137. The acts and omissions of Defendants constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 et seq.

138. Plaintiff is also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

139. Plaintiff is also entitled to an award of costs.

140. Defendants' calls were not made for "emergency purposes."

141. Defendants' calls to Plaintiff were made without any prior express written consent.

142. Defendants contacted Plaintiff despite the fact that Plaintiff was on the Do Not Call Registry.

143. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

144. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

145. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

**COUNT 1.**
CALLING A CELLULAR TELEPHONE WITH THE USE OF AN "AUTOMATIC TELEPHONE DIALING SYSTEM" ("ATDS"), 47 U.S.C. § 227(b)(1)(A)(iii)

146. Plaintiff incorporates the foregoing paragraphs as through the same were set forth at length herein.

147. Defendants called Plaintiff's cellular telephone using an "automatic telephone dialing system" as defined by the TCPA on at least seventeen (17) occasions in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

148. Plaintiff was statutorily damaged at least seventeen (17) times under 47 U.S.C. § 227(b)(3)(B) by the Defendants by the telephone calls described above, in the amount of $500.00 for each of these calls.

149. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(b)(3)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and severally, in an amount of $25,500.00 plus costs and any other remedy deemed appropriate.

## COUNT 2.
### CALLING A CELLULAR TELEPHONE WITH THE USE OF "AN ARTIFICIAL OR PRERECORDED VOICE" ("ATDS") 47 U.S.C. § 227(b)(1)(B)

150. Plaintiff incorporates the foregoing paragraphs as through the same were set forth at length herein.

151. Defendants called Plaintiff's cellular telephone using an artificial or prerecorded voice to deliver a message without the Plaintiff's prior express consent on at least seventeen (17) occasions in violation of 47 U.S.C. § 227(b)(1)(B).

152. Plaintiff was statutorily damaged at least seventeen (17) times under 47 U.S.C. § 227(b)(3)(B) by the Defendants by the telephone calls described in paragraphs above, in the amount of $500.00 for each of these calls.

153. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(b)(3)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and severally, in an amount of $25,500.00 plus costs and any other remedy deemed appropriate.

## COUNT 3.
### INITIATING A TELEPHONE SOLICITATION TO A TELEPHONE SUBSCRIBER WHO HAS REGISTERED HIS NUMBER ON THE DO-NOT-CALL LIST AT LEAST 31 DAYS PRIOR TO THE TELEPHONE CALL. 47 C.F.R. § 64.1200(c)(2)

154. Plaintiff incorporates the foregoing paragraphs as through the same were set forth at length herein.

155. Plaintiff's telephone number has been registered on the Federal Do Not Call Registry since at least 30 days prior to the calls described above.

156. Defendant called Plaintiff's telephone at least seventeen (17) times after Plaintiff's telephone had been registered on the Do Not Call Registry for at least 31 days before Defendant's calls, in violation of 47 C.F.R. § 64.1200(c)(2).

157. Plaintiff was statutorily damaged at least seventeen (17) times under 47 U.S.C. § 227(c)(5)(B) by the Defendants by the telephone calls described above, in the amount of $500.00 for each of the seventeen (17) telephone calls.

158. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and severally, in an amount of $25,500.00 plus costs and any other remedy deemed appropriate.

## COUNT 4.
### DEFENDANTS VIOLATED THE ILLINOIS TELEPHONE SOLICTATIONS ACT AND RESTRICTED CALL REGISTRY ACT

159. Plaintiff incorporates the foregoing paragraphs as through the same were set forth at length herein.

160. The Illinois Telephone Solicitations Act, inter alia, prohibits the making of a call in a manner which impedes the function of caller ID.

161. The Illinois Restricted Call Registry Act, inter alia, prohibits the making of telephone calls using an automatic dialer without Plaintiff's prior express invitation or permission.

162. The Illinois Restricted Call Registry Act utilizes the same do not call registry as the national do not call list.

163. Section 50 of the Illinois Restricted Call Registry Act provides for statutory damages of $500 per violation of the Act.

164. Defendants violated the Illinois Restricted Call Registry Act with each call they made, and Plaintiff is entitled to $500 per call.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and severally, in an amount of $8,500 plus costs and any other remedy deemed appropriate.

### COUNT 5.
### DEFENDANT VIOLATED THE ILLINOIS AUTOMATIC TELEPHONE DIALERS ACT, 815 ILCS 305

165. Plaintiff incorporates the foregoing paragraphs as through the same were set forth at length herein.

166. The ATDA prohibits "play[ing] a prerecorded message placed by an autodialer without the consent of the called party." 815 ILCS 305/30(b).

167. Defendants did not have the consent of Plaintiff to play a prerecorded message placed by an autodialer.

168. Nonetheless, Defendants or one of its affiliates or vendors did.

169. The Illinois Automatic Telephone Dialers Act, inter alia, prohibits the making of telephone calls using an automatic dialer without Plaintiff's prior express invitation or permission.

170. Section 30 of the Illinois Automatic Telephone Dialers Act provides for statutory damages of $500 per violation of the Act.

171. Defendants violated the Illinois Automatic Telephone Dialers Act with each call it made, and Plaintiff is entitled to $500 per call.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendant, in an amount of $8,500.00 plus costs and any other remedy deemed appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of him and against all Defendants, jointly and severally, in an amount to be more fully determined at trial, but at least $93,500.00 as permitted by statute, as follows::

A. All actual damages Plaintiff suffered;

B. Statutory damages of $500.00 per call for each and every violation of 47 U.S.C. § 227(b)(1)(A);

C. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(b)(3)(C);

D. Statutory damages of $500.00 per call for each and every violation of 47 U.S.C. § 227(b)(1)(B);

E. Statutory damages of $500.00 per call for each and every violation of 47 C.F.R. § 64.1200(c)(2);

F. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(c)(5)(C).

G. Statutory damages of $500.00 per call for violation of Illinois Restricted Call Registry Act;

H. Statutory damages of $500.00 per call for violation of Illinois Automatic Telephone Dialers Act;

I. All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff;

J. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future

K. Any other relief this Court deems proper.

Respectfully submitted,

DATED: November 2, 2021

*/s/ Jorge A. Rojas*

Jorge Alejandro Rojas
557 Cambridge Way
Bolingbrook, IL 60440
Rojas.jorge96@gmail.com
424-219-1582
Plaintiff in *Pro Se*

# EXHIBIT 1

# EXHIBIT 1

 **Gmail**

Jorge Rojas <rojas.jorge96@gmail.com>

## National Do Not Call Registry - Your Registration Is Confirmed

**Verify@donotcall.gov** <Verify@donotcall.gov>                              Fri, Jun 18, 2021 at 12:15 PM
To: rojas.jorge96@gmail.com

Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 1582 on January 18, 2008. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit https://www.donotcall.gov  to register another number or file a complaint against someone violating the Registry.

*****************************************************************************************************************

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.

# EXHIBIT 2

# EXHIBIT 2



ACCOUNT ENDING - 82006                                                                CARD MEMBER

Delta SkyMiles® Platinum                                                               JORGE ROJAS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| Aug 18 | **AAP** | **$150.00** |
| | 1300 N CONGRESS AVE | |
| | | |
| | WEST PALM BEACH | |
| | FL | |
| | 33409 | |
| | (800) 941-8430 | |

**AAP 1300 N CONGRESS 8009418430 FL**

Will appear on your Aug 20, 2021 statement as AAP 1300 N CONGRESS 8009418430 FL

CARD
JORGE ROJAS

DELTA SKYMILES®
1X on Other purchases                                                                              150

ADDITIONAL INFORMATION
31089101231 8009418430

# EXHIBIT 3

# EXHIBIT 3



**AAP**



# THE PROTECTION
## YOU DESERVE

**Your policy on the go!**
www.gotomycoverage.com



JORGE ROJAS                                                        08/18/21

Thank you for choosing AAP.  We strive to bring you the very best customer experience while under our care.  We understand what an important role your vehicle plays in your daily routine and the stress a breakdown can cause to you and your family.  AAP plans include a Rental Car, Towing, 24-Hour Roadside Assistance and Concierge Services to help eliminate these stressful times.

Please take the time to carefully review all of your vehicle protection plan information below to ensure its accuracy.  If it is not correct, please contact us at 1 (888) 678-0697.

Sincerely,

The AAP Team

## Important Contact Numbers

**Roadside:**   833-762-5197                    Clai...        5197



**Your membership card**

# VEHICLE SERVICE CONTRACT
# DECLARATION PAGE

**Ultimate Coverage**

Service Contract Number: **MCB1202494**

## PURCHASER INFORMATION

Name: **JORGE ROJAS**

Spouse Name:

Street Address: **557 CAMBRIDGE WAY**

City, State, Zip Code: **BOLINGBROOK, IL 60440**

Telephone: **(424) 219-1582**

Email Address: **rojas.jorge96@gmail.com**

## SELLER INFORMATION

Seller Name: **AAP**

Street Address: **1300 OLD CONGRESS RD**

City, State, Zip Code: **WEST PALM BEACH, FL 33409**

Seller Number:

Telephone: **(888) 678-0697**

## LIENHOLDER INFORMATION

Lienholder Name: **MEPCO**

Street Address: **10 S. LASALLE SUITE 2310**

City, State, Zip Code: **CHICAGO, IL 60603**

Telephone: **(800) 397-6767**

## VEHICLE INFORMATION

Year: **2015**    Make: **CHEVROLET**    Model: **SONIC**

Vehicle Identification Number (17 Digits): **1G1JC6SG3F4161154**

Current Odometer: **49,990**    Vehicle Purchase Price: **NA**

## COVERAGE INFORMATION

Service Contract Purchase Date: **08/18/21**

Deductible: **$100**

Total Months: **48**

Expiration Date: **09/18/25**

Optional Surcharge Coverage:

Mandatory Surcharges:

Service Contract Purchase Price: **$3,665.00**

Total Miles: **100,000**

Expiration Mileage: **101,000**

**NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION. CLAIMS: (833) 762-5197**

# DECLARATION SECTION

The Coverage provided to the **Purchaser** (**"You"**, **"Your"**, **"Service Contract Holder"**) is listed in **Your Service Contract** and is not subject to any verbal representations made by the **Seller** of this **Service Contract**.

This **Service Contract** may run concurrent with and is secondary to any applicable Manufacturer's Warranty.

The **Purchaser** understands and acknowledges that:

1. The information contained in this declaration page, which will be attached to and become part of the **Service Contract**, is accurate and complete to the best of their knowledge.

2. They have reviewed and understand the **Service Contract** and will abide by the terms of the **Service Contract**.

3. This Vehicle **Service Contract** is between the **Purchaser** named above and Autoguard Advantage Corporation, 5500 Frantz Road, Suite 120, Dublin, OH 43017, identified as the Service Contract Provider for this Contract.

4. This **Service Contract** must be received by Dimension Service Corporation, ("**Administrator**"), located at 5500 Frantz Road, Suite 120, Dublin, OH 43017, from the **Seller**, verified and accepted by the **Administrator** for vehicle eligibility.

5. This Service Contract is not an insurance policy or product warranty, implied or otherwise.

6. **PURCHASE OF THIS SERVICE CONTRACT IS NOT REQUIRED IN ORDER TO LEASE OR PURCHASE A VEHICLE OR OBTAIN VEHICLE FINANCING.**

7. This **Service Contract** contains an arbitration provision which may affect **Your** legal rights. Please review the arbitration section in its entirety to determine whether **Your** legal rights are affected.

Thank You for choosing Our Ultimate Service Contract! You have selected an Exclusionary Service Contract which will provide You with peace of mind and protection against Mechanical Breakdowns as described herein.

### Customer Service: 833-762-5197

### Claims: 833-762-5197

### Roadside Assistance: 833-762-5197

### IMPORTANT INFORMATION YOU NEED TO KNOW:

Your Service Contract number is located on the Declaration Page of this Service Contract. Please refer to this number in any written or verbal communication, such as requesting information or filing a Claim.

## INSURANCE STATEMENT

Performance to the Purchaser under this Service Contract is guaranteed by an authorized insurance company. If the benefits as described are not provided within sixty (60) days after You provide proof of loss covered by this Agreement, then You may file a Claim with the insurance company. The name and address of the insurance company is: Lexington National Insurance Corporation, P.O. Box 6098, Lutherville, MD 21094, (888) 888-2245.

## DEFINITIONS

This Service Contract contains words and phrases that have specified meaning and appear throughout this Service Contract. Their meanings are listed below:

**Actual Cash Value (ACV)–** Means the National Auto Dealers Association (NADA) published wholesale trade-in value of Your Vehicle immediately prior to the Breakdown taking age, condition and mileage into consideration.

**Breakdown, Mechanical Breakdown** – The inability of a Covered Part to perform the function for which it was designed due to a material defect that is not related to the action or inaction of any non-covered part or outside influence. A gradual reduction in performance commonly referred to as "wear and tear," will be considered a Breakdown when the wear has exceeded the manufacturer's published tolerance. Please refer to the WHAT IS NOT COVERED section for a listing of conditions under which the failure of a Covered Part is not considered a Breakdown.

**Business Use** – Coverage is provided if the Business Use surcharge has been paid as specified on Your Declaration Page. Eligibility is limited to vehicles used for repair work, service work, route work, and delivery work. Coverage is limited to single use drivers.

**Claim(s)** – Means a request made by You for benefits under this Service Contract.

**Coverage Selected** – Means the level of protection You have selected, as shown in the Coverage Information section of the Declaration Page.

**Covered Part(s):** Refers to the mechanical or electrical components described under What is Covered By This Contract section as contained in this Service Contract which are original parts on Your Vehicle at the time of its purchase by You or like replacement parts meeting the manufacturer's specifications.

**Declaration Page:** Means the numbered document attached to this Contract which outlines information regarding You, Your Vehicle, Coverage Selected and other vital information.

**Deductible** – Means the amount You are required to pay, as shown in the Coverage Information section of the Declaration Page, per repair for covered Breakdowns.

**Licensed Repair Facility** – Refers to the entity that is, has or will be performing repairs to Your Vehicle. Such Facility must be licensed and/or approved by the state to perform automotive repairs, must have a tax identification number where required and be capable of performing the needed repairs to Your Vehicle.

## NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION. CLAIMS: (833) 762-5197

# PAYMENT PLAN AGREEMENT

**Payment Plan Provider provided by:**
SING For Service, LLC d/b/a Mepco
205 N. Michigan Avenue, Suite 2200, Chicago, IL 60601
Fax 312-853-0535     Telephone: 800-397-6767

## Purchaser:

NAME: JORGE ROJAS
ADDRESS: 557 CAMBRIDGE WAY
CITY, ST, ZIP: BOLINGBROOK, IL 60440
PHONE: (424) 219-1582         FAX:
E-MAIL: rojas.jorge96@gmail.com
CODE: MCB

## Seller:

LEGAL NAME: AAP
DBA:
ADDRESS: 1300 OLD CONGRESS RD
CITY, ST, ZIP: WEST PALM BEACH, FL 33409
PHONE: (888) 678-0697         FAX:
E-MAIL:
SALESPERSON: Diego Meza (gray)

### Payment Plan Terms
*All dollar amounts are in U.S. dollars.*

| | |
|---|---|
| **Total Sales Price** | $3,665.00 |
| **Down Payment** (Minimum 5% of Total Sales Price) | $150.00 |
| **Balance of Sales Price** | $3,515.00 |
| **Number of Payments** | 24 |
| **Amount of Each Payment** (Balance of Sales Price divided by Number of Payments) | $146.46 |
| **Payment Date (each month)** (First due date no more than 30 days from sale date) | 9/18/2021 |
| **Final Payment Date** (Date of last Payment) | 8/18/2023 |

This Payment Plan Agreement ("Agreement") is between Purchaser and SING For Service, LLC d/b/a Mepco ("MEPCO"), a Seabury Asset Management Company. Purchaser has purchased a service contract ("Contract") from Seller that is issued by **PELICANLX** ("Administrator"). This Agreement is entered into to enable Purchaser to pay for the Contract pursuant to an installment payment program.

Contract: **ULTIMATE**
Contract No.: **MCB1202494**
Administrator: **PELICANLX**

### Vehicle Information

Contract and Payment Plan Effective Date: 08/18/21
Make: **CHEVROLET**
Model: **SONIC**
Year: **2015**     Odometer: **49,990**
VIN: **1G1JC6SG3F4161154**
Coverage Term: (in months) **48**
Coverage Mileage: (in Miles) **100,000**
Refer to the Contract for the terms and conditions regarding the Contract.
In consideration of Purchaser being afforded the opportunity to pay for the Contract under the installment payment program, the Purchaser and MEPCO acknowledge and agree as follows:
(continued)

MCB1202494

7_11

Payment Plan Agreement Page 2

Purchaser has paid to Seller for its account in cash the down payment disclosed under "Payment Plan Terms" towards the Total Sales Price of the Contract. The Balance of Sales Price shall be paid by Purchaser to MEPCO. Subject to the Cancellation provisions on Page 3 hereof, Purchaser promises to pay MEPCO, the Balance of Sales Price in accordance with the payment method selected by Purchaser from the options set forth below.

## Payment Option 1: Authorization for Credit Card Payment

The Balance of Sales Price may be paid by Purchaser through, and Purchaser hereby authorizes MEPCO to make, the applicable number of consecutive monthly charges to Purchaser's credit card account listed below, in the amounts and on the dates disclosed under the Payment Plan Terms, until such time as the Balance of Sales Price, together with the applicable charges described on page 3 hereof (the "Applicable Charges"), are fully paid, or until such time as MEPCO has received written notification of termination ("Credit Card Payment Termination Notice") from Purchaser in time to allow reasonable opportunity to act on it.

****-****-****-2006     08/25     Amx

Credit Card Number     Expiration Date (MM/YY)   Type of Card (MC, Visa, Amex, Discover)

I authorize charges to my credit card account for payment of the Balance of Sales Price together with all Applicable Charges in accordance with this Agreement.

## Payment Option 2: Authorization for Bank Account Direct Debit

The Balance of Sales Price may be paid by Purchaser through, and Purchaser hereby authorizes MEPCO to instruct Purchaser's financial institution described below to make, the applicable number of consecutive monthly payments in the amounts and on the dates disclosed under Payment Plan Terms, from the account listed below, by electronic automatic debit of Purchaser's checking or savings account. This authority will remain in effect until such time as the Balance of Sales Price, together with all applicable Charges, are fully paid, or until such time as MEPCO has received written notification of termination ("Bank Account Direct Debit Termination Notice") from Purchaser in time to allow reasonable opportunity to act on it.

☐ Checking

Name of Financial Institution     Routing Number     Account Number   ☐ Savings
                                  (Must be 9 digits long)

I authorize charges to my bank account for the payment of the Balance of Sales Price together with all Applicable Charges in accordance with this Agreement.

## Payment Option 3: Monthly Bill

The Balance of Sales Price may be paid directly by Purchaser in accordance with the Payment Plan Terms listed above. Purchaser shall receive a monthly bill and shall make payment on or before the Payment Date of each consecutive month until the Balance of Sales Price, together with all Applicable Charges, are fully paid, or until such time as MEPCO has received written notification of termination ("Monthly Bill Termination Notice") from Purchaser. Purchaser shall send such payments to MEPCO at such address as MEPCO provides to Purchaser.

PURCHASER SHALL HAVE THE RIGHT, AT ANY TIME, TO CANCEL THE CONTRACT BY NOTICE TO MEPCO ("Termination Notice") OR BY NONPAYMENT. PURCHASER SHALL HAVE NO OBLIGATION TO MAKE ANY INSTALLMENT PAYMENTS AFTER CANCELLATION. Subject to the Cancellation provisions on Page 2 hereof, unless MEPCO shall previously have received a Bill Termination Notice, (i) a late payment fee may be imposed in the amount of the lesser of 5% of the late payment or $5.00 in respect of any payment not received by MEPCO within five days of the scheduled Payment Date therefor (the "Late Charge"), and (ii) in the event that any scheduled payment is not made on or before the scheduled Payment Date, as provided in the Payment Plan Terms above, MEPCO is authorized by Purchaser (without notice thereof to Purchaser) to direct Administrator or Seller to cancel Purchaser's Contract and this Agreement at any time for nonpayment. Purchaser hereby assigns to MEPCO all of Purchaser's right, title and interest in and to the Contract, including Purchaser's rights to cancel the Contract, receive all unearned and refund amounts under the Contract and Purchaser's right to make a direct claim for indemnity against the Insurance Company. Purchaser represents to MEPCO that Purchaser's decision to purchase the Contract from Seller under the payment program did not result in Seller charging Purchaser a different Total Sales Price for the Contract than Purchaser would have paid

See page 3 for additional terms and conditions.

MCB1202494

7_11

# EXHIBIT 4

# EXHIBIT 4

**FLORIDA DEPARTMENT of STATE**                    DIVISION OF CORPORATIONS



[Previous on List](#)   [Next on List](#)   [Return to List](#)          Fictitious Name Search

**No Filing History**                                                    Submit

# Fictitious Name Detail

### Fictitious Name

AAP

### Filing Information

| | |
|---|---|
| **Registration Number** | G21000024125 |
| **Status** | ACTIVE |
| **Filed Date** | 02/19/2021 |
| **Expiration Date** | 12/31/2026 |
| **Current Owners** | 1 |
| **County** | PALM BEACH |
| **Total Pages** | 1 |
| **Events Filed** | NONE |
| **FEI/EIN Number** | 85-3779817 |

### Mailing Address

1300 N CONGRESS AVENUE
WEST PALM BEACH, FL 33409

### Owner Information

PELICAN INVESTMENT HOLDINGS GROUP, LLC
1300 N CONGRESS AVENUE
WEST PALM BEACH, FL 33409
**FEI/EIN Number:** 85-3779817
**Document Number:** M21000001080

### Document Images

[02/19/2021 -- REGISTRATION](#)   View image in PDF format

[Previous on List](#)   [Next on List](#)   [Return to List](#)          Fictitious Name Search

**No Filing History**                                                    Submit

Florida Department of State, Division of Corporations

# **<u>EXHIBIT 5</u>**

# **<u>EXHIBIT 5</u>**

FLORIDA DEPARTMENT *of* STATE          DIVISION OF CORPORATIONS



Department of State / Division of Corporations / Search Records / Search by Entity Name /

# Detail by Entity Name

Florida Limited Liability Company
AFFORDABLE AUTO PROTECTION, LLC

**Filing Information**

| | |
|---|---|
| **Document Number** | L20000232535 |
| **FEI/EIN Number** | 86-2888397 |
| **Date Filed** | 08/03/2020 |
| **State** | FL |
| **Status** | ACTIVE |

**Principal Address**

1300 Old Congress Rd
WEST PALM BEACH, FL 33409

Changed: 04/06/2021

**Mailing Address**

1300 Old Congress Rd
WEST PALM BEACH, FL 33409

Changed: 04/06/2021

**Registered Agent Name & Address**

RENNY, GUS
1300 Old Congress Rd
WEST PALM BEACH, FL 33409

Address Changed: 04/06/2021

**Authorized Person(s) Detail**

**Name & Address**

Title MGR

RENNY, GUS
1300 Old Congress Rd
WEST PALM BEACH, FL 33409

**Annual Reports**

| Report Year | Filed Date |
|---|---|
| 2021 | 04/06/2021 |

**Document Images**

04/06/2021 -- ANNUAL REPORT | View image in PDF format

08/03/2020 -- Florida Limited Liability | View image in PDF format

Florida Department of State, Division of Corporations

# EXHIBIT 6

# EXHIBIT 6



ACCOUNT ENDING - 82006

Delta SkyMiles® Platinum

CARD MEMBER

JORGE ROJAS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| Oct 20 | **TRINITY AUTOMOTIVE SERVICES**<br>1041 WEST 18TH ST<br>STE A-203<br>COSTA MESA<br>CA<br>92627<br>(800) 938-0104 | **TRINITY AUTO SERVICECOSTA MESA CA** | **$295.00** |

**TRINITY AUTO SERVICECOSTA MESA CA**

Will appear on your Oct 21, 2021 statement as
TRINITY AUTO SERVICECOSTA MESA CA

CARD
JORGE ROJAS

DELTA SKYMILES®
1X on Other purchases                                    295

ADDITIONAL INFORMATION
73055461294 SUPPORT@TRINITYAUTOSE
SUPPORT@TRINITYAUTOSERVIC

# EXHIBIT 7

# EXHIBIT 7

15:52





+1 (561) 333-1005

Text Message
Wed, Oct 20, 10:39

Thank you for becoming a part of the AAP Family click https://policy-hub.com/newwelcome.php?cid=14242191582 for your Policy Info. Reply stop to unsubcribe

Text Message










# EXHIBIT 8

# EXHIBIT 8

# Welcome to The Family!



## Complete Car Care:

Welcome to the family and thank you for your purchase.
This page is the first part of your welcome package and you should receive a Policy confirmation in your email. All members receive a hard copy of their policy plan in the mail.

Hard copies of your policy should take about 14 business day's to print and be sent to your address. So be sure to check your email if you didn't provide an email and have not received your policy in 15 days then please reach out to us.
Should you require an additional copy, please contact customer support.

Now that you a member, your Car Plan details include the follow along with any specific items on your car plan that you worked out during the purchase. See Below for details:

## ALL VEHICLE SERVICE CONTRACTS INCLUDE:

### 24 Hour Roadside Assistance:

*This Program Includes:*

- *Towing*
- *Lock Out Service*
- *Fuel Delivery Service*
- *Battery Boost/Jump Assistance*
- *Tire Assistance*

### Substitute Transportation:

*Authorized Repairs may qualify for Rental Reimbursement. The maxumum benefit is $35.00 per day and total reimbursement will not exceed $175.00 for any single claim.*

## Trip Interruption:

*Reimbursement for lodging and meal expenses will be provided in the event that a failure and the covered repair of that failure occur more than 100 miles from the client's residence leaving the client stranded overnight. The reimbursement is a maximum of two hundred forty dollars ($240.00) for lodging and meal expenses. Reimbursement is limited to eighty dollars ($80.00) per day for charges incurred between the time of the failure and the time it is repaired.*

## Engine:

*All internally lubricated components including: Cylinders, Pistons, Piston Rings, Connecting Rod Bearings, Crankshaft, Crankshaft Main Bearings, Camshaft, Camshaft Bearings, Cam Followers, Timing Gears, Timing Chain, Guides, Tensioners, Rocker Arms, Rocker Shafts, Rocker Bushings, Valve Springs, Valve Guides (only covered when guide sleeves have not dropped below original position), Valve Lifters, Valve Seals, Valve Retainers, Push Rods, Oil Pump, Balance Shaft, Balance Shaft Bushing, Balance Shaft Bearing, Wrist Pins, Connecting Rods, Distributor Drive Gear.*

## Transmission:

*All internally lubricated components including: Drive Chain and Gears, Carrier Bearings, Internal Transaxle Seal, Valve Body, Internal Sensors and Solenoids.*

## Transfer Unit:

*Internally lubricated parts within the Transfer Unit including bearings, bushings, sprockets, chains, sleeves, shift forks and gears (excluding electrical items).*

## Differential:

*(Front and Rear) Differential Housing, Axle Shaft, Ring and Pinion, Bearings, Bushings, Washers, Differential Cover and all other internal parts contained with the differential assembly.*

## Seals and Gaskets:

*Seals and Gaskets are covered only in conjunction with the repair or replacement of the COVERED PARTS.*

# OPTIONAL BENEFITS:

## Security:

*All products backed by an A.M. Best "A-" Rated Insurance Company*

## Transferrable Contract:

*Contracts are transferrable if the vehicle is sold by the owner to another private party. A $50 fee does apply to complete the transfer.*

## Nationwide Coverage:

*Vehicle repairs may be performed by any licensed repair shop of the clients choosing. The repair shop must contact the administrator and receive approval prior to any repairs being made. Unauthorized repairs will not be covered.*

## Deductible Options:

*Most products provide deductible options of $0, $50, $100, $200, $250, and $500 making a lower customer payment achievable.*

## And more:

*Depending on your plan level you may have better coverage of your vehicle. As well as other Benefits not present in this list. to see more about your plan click the below button*

> Plans

The above examples are for illustration purposes only. Please refer to your Vehicle Service Agreement for all terms, conditions, coverages, and exclusions.

# Ready to get started? Sign up now!

| Enter your email... | Sign up! |

Cookie Policy   ·   Contact   ·   Terms of Use   ·   Privacy Policy

  

© Policy-hub.com 2019. All Rights Reserved.

# **EXHIBIT 9**

# **EXHIBIT 9**

Case: 1:21-cv-04663 Document #: 18 Filed: 11/02/21 Page 55 of 67 PageID #:119

 **Gmail**

Jorge Rojas <rojas.jorge96@gmail.com>

## Auto Service Contract Confirmation

**privacy@policy-hub.com** <privacy@policy-hub.com>                Wed, Oct 20, 2021 at 3:12 PM
To: ROJAS.JORGE96@gmail.com

Please use this link to download your confirmation http://policy-hub.com/index.php?clientkey=0DA5605D-2E87-4B49-E691-7CBD565957E6&name=JORGE%20ROJAS



**Extended Service Protection**

Dear JORGE

Congratulations and thank you for your purchase! You have made an excellent decision in protecting your vehicle with the purchase of our extended service protection. Your Certificate of Coverage and ID Card should arrive within the next 10-14 business days.

Please review your information to confirm it is accurate. If you have any questions or require assistance, feel free to contact us at 888.928.3585.

Sincerely,
AAP

**Vehicle**
Year: 2015
Make: CHEVROLET
Model: SONIC
Odometer: 49990

**Important Benefits**

- Pays repair facility directly.
- Transferable coverage (n/a for all plans)
- Low deductible options
- Protects your financial investment.
- Rental and Towing options available on most plans.

**Mail Sent To**

Email:  ROJAS.JORGE96@GMAIL.COM

Ref #: C948576

AAP and the Logo are registered trademarks of AAP.
1300 Old Congress Rd West Palm Beach, FL 33409



## Extended Service Protection

Dear

Congratulations and thank you for your purchase! You have made an excellent decision in protecting your vehicle with the purchase of our extended service protection. Your Certificate of Coverage and ID Card should arrive within the next 10-14 business days.

Please review your information to confirm it is accurate. If you have any questions or require assistance, feel free to contact us at 888.928.3585.

Sincerely,
AAP

**Vehicle**
Year:
Make:
Model:
Odometer:

## Important Benefits

- Pays repair facility directly.
- Transferable coverage (n/a for all plans)
- Low deductible options
- Protects your financial investment.
- Rental and Towing options available on most plans.

## Mail Sent To

Email:

Ref #: C948576

AAP and the Logo are registered trademarks of AAP.
1300 Old Congress Rd West Palm Beach, FL 33409

# EXHIBIT 10

# EXHIBIT 10

 Gmail

Jorge Rojas <rojas.jorge96@gmail.com>

# Important information regarding your Mepco Payment Plan with TRINITY-PELICAN

**Mepco Payment Plans** <ddc@digitaldc.biz>
To: ROJAS.JORGE96@gmail.com

Tue, Oct 26, 2021 at 10:50 AM

Hi Jorge Rojas, Thank you for being a TRINITY-PELICAN customer. Mepco is the company that will process your monthly payment for your payment plan. For your convenience, your electronic statement from Mepco is attached. You may also access your account details, make a payment, or set up automatic payments online at www.mepco.com or visit Easy Pay at https://www.mepco.com/payment/SDLP43500912 to make a payment. If you have any questions, please see the attached statement for appropriate contact information. Thank you, Mepco

 **_393493x7400.pdf**
1368K

 **MEPCO**

Providing Billing Services for Your Automotive Protection Plan
10 South LaSalle Street - Suite 2310 Chicago, Illinois 60603

| THIS IS NOT A BILL |
| --- |

# WELCOME LETTER

| **ACCOUNT INFORMATION** | **30211075255514** |
| --- | --- |
| Billing Account Number: | 30211075255514 |
| Seller Contract Number: | SDLP43500912 |

000001                    0          Return Service Requested

Jorge Rojas
557 Cambridge Way
Bolingbrook, IL 60440-1047

Dear Valued Customer,

## Congratulations on your purchase of a vehicle service contract from   TRINITY-PELICAN

We appreciate your business! Mepco is the company that will process your monthly payments for this contract. Mepco is not responsible for the marketing, sale, design, administration of claims, or payment of claims under this vehicle service contract.

Please carefully review the information on the next page and confirm your monthly payment method and the terms of your vehicle service contract. If you have any questions or if the terms are different than you agreed to, please call our office immediately.

You may access your account online at **www.mepco.com** to make payments and review important account details such as remaining balance, contract details, and more.

| **MEPCO.COM LOGIN INFORMATION** | |
| --- | --- |
| **User Name:**     30211075255514 | |
| **Password*:**     R939J9L99957 | |
| *You will be prompted to change your password upon your first time logging in. | |

Thank you for your business.  We look forward to servicing your account.

Mepco

Rev. 06/2017

| **FACTS** | **WHAT DOES MEPCO** |
| | **DO WITH YOUR PERSONAL INFORMATION?** |

| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include: |
| | ■ Social Security number and Credit Card and/or Checking Account Information |
| | ■ Account Balance and Account Transaction and Transaction History |
| | ■ Payment History and Other Personally Identifiable Information |
| | When you are *no longer* our customer, we continue to share your information as described in this notice. |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Mepco chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Mepco share? | Can you limit this sharing? |
| --- | --- | --- |
| **For our everyday business purposes—** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes—** to offer our products and services to you | No | We Don't Share |
| **For joint marketing with other financial companies** | No | We Don't Share |
| **For our affiliates' everyday business purposes—** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes—** information about your creditworthiness | No | We Don't Share |
| **For nonaffiliates to market to you** | No | We Don't Share |

| **Questions?** | Call 800-397-6767 or go to www.Mepco.com |

**Page 2**

## Who we are

| | |
|---|---|
| **Who is providing this notice?** | Mepco |

## What we do

| | |
|---|---|
| **How does Mepco protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| **How does Mepco collect my personal information?** | We collect your personal information, for example, when you<br><br>■ Open An Account  *or* Give Us Your Contract Information<br>■ Use Your Credit Card  *or* Debit Card<br>■ Provide Account Information to Pay us by Check or ACH<br><br>We also collect your personal information from other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br><br>■ sharing for affiliates' everyday business purposes—information about your creditworthiness<br>■ affiliates from using your information to market to you<br>■ sharing for nonaffiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. |

## Definitions

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br><br>■ *Our affiliates include financial companies such as Seabury Capital.* |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br><br>■ *Non-affiliates we share with can include the company that sold you your vehicle service contract and service contract administrators.* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><br>■ *Mepco does not jointly market.* |

## Other important information

For California residents, Mepco may collect personally identifiable information via your activity on our website, www.Mepco.com. We reserve the right to not respond to "Do Not Track" requests received as the information collected is for the purpose of, and used in the course of, reasonable business processes as described above. Please contact Mepco's Customer Service | Business Support Services department at (800) 397-6767 with any questions.

 **MEPCO**

Providing Billing Services for Your Automotive Protection Plan
10 South LaSalle Street - Suite 2310 Chicago, Illinois 60603

**THIS IS NOT A BILL**

# CONFIRMATION OF PREAUTHORIZED ACH/CC

**BILLING ACCOUNT NUMBER**     30211075255514

## ACCOUNT AND CONTRACT INFORMATION

| BILLING OR PAYMENT QUESTIONS | |
| --- | --- |
| Contact Mepco at: | (800)397-6767 |
| Billing Account Number: | 30211075255514 |
| Access your account online at: | WWW.MEPCO.COM |
| User Name: | 30211075255514 |

| QUESTIONS REGARDING THE PURCHASE OF THIS CONTRACT | |
| --- | --- |
| TRINITY-PELICAN | (888)928-3585 |
| Contract Number: | SDLP43500912 |

| COVERAGE, CLAIMS AND REPAIR QUESTIONS | |
| --- | --- |
| DEALER LOYALTY PROTECTION | (888)361-9611 |
| Contract Number: | SDLP43500912 |

0     Return Service Requested

Jorge Rojas
557 Cambridge Way
Bolingbrook, IL 60440-1047

### PLEASE NOTE

Mepco is not responsible for the marketing, sale, design, administration of claims, or payment of claims under this vehicle service contract.

Dear Valued Customer,

**IMPORTANT NOTICE:**
This letter is to confirm that you have arranged to make recurring payments to Mepco under your vehicle service contract. Pursuant to your Authorization Agreement for Recurring Direct Payments, Mepco will charge/debit your designated credit card or debit card/bank account in the amount of the monthly payments and fees you owe under your vehicle service contact and on or after the date indicated in your debit authorization, in each case subject to additional terms and conditions of your Authorization Agreement for Recurring Direct Payments.

Payment Method Used:    Credit Card
Truncated Account Number:    2006

**WHAT THIS MEANS:**
Each month your payment will be processed automatically by Mepco using the above account information.

**HOW TO UPDATE AUTOMATIC RECURRING PAYMENTS:**
Your recurring debit authorization will remain in effect until revoked by you in accordance with the terms below:

You may update your automatic recurring payment at any time by submitting an email to request to update recurring payments on our website at www.mepco.com, by mailing a written statement expressly revoking this authorization to Mepco, 10 South LaSalle Street - Suite 2310 Chicago, Illinois 60603, or by calling Mepco's Customer Service department at (800) 397-6767.

\*\*\* Please note, Mepco will require a reasonable time, but in no event less than 10 calendar days following the receipt of this authorization or any change to or revocation of this authorization, to act on the authorization, change or revocation.

**If you have not requested this change to automatic recurring payments, please contact our office immediately.**

If you have any questions regarding this notice please contact our Customer Service department at (800) 397-6767 Monday through Friday from 8:00 am to 5:00 pm CST.

Sincerely,

Mepco

# <u>EXHIBIT 11</u>

# <u>EXHIBIT 11</u>





# Dealer Loyalty Protection

Customer Service: 1-888-361-9611
Claims & Roadside: 1-844-241-5518
Claims: www.dealerloyaltyprotection.com – select file a claim



**Administrative Office:**
**Auto Knight Motor Club, Inc.**
[10751 Deerwood Park Blvd
Suite 200
Jacksonville, FL 32256]

Membership Number

SDLP43500912

## Superior Motor Club

**SCHEDULE:**

**Vehicle Information:**

| Year: | Make: | Model: | Vehicle Identification Number: |
|---|---|---|---|
| 2015 | CHEVROLET | SONIC | 1G1JC6SG3F4161154 |

| Purchase Date: | Miles at Time of Sale: | | |
|---|---|---|---|
| 10/20/2021 | 49,990 | | |

**Member Information:**

| Last Name: | First Name: | Middle Initial: | E- Mail Address: |
|---|---|---|---|
| ROJAS | JORGE | | ROJAS.JORGE96@GMAIL.COM |

| Address: | City: | State: | Zip: | Telephone: |
|---|---|---|---|---|
| 557 CAMBRIDGE WAY | BOLINGBROOK | IL | 60440 | (424) 219-1582 |

**Seller (Club Agent) Information:**

| Seller or Dealer Name: | Telephone: |
|---|---|
| TRINITY AUTO SERVICES LLC | (888) 928-3585 |

| Address: | City: | State: | Zip Code: |
|---|---|---|---|
| 1041 W 18TH ST A-203 | COSTA MESA | CA | 60440 |

**Motor Club Membership Information:**

| Membership Cost: | |
|---|---|
| $ 3,495.00 | |

| Membership Term: | | Membership Effective Date: | Membership Expiration Date: |
|---|---|---|---|
| ☐ 36 Months  ☐ 48 Months  ☒ 60 Months | | 11/29/2021 | 11/29/2026 |

### Acceptance of Terms, Conditions and Coverage

YOU ARE NOT REQUIRED TO ENTER INTO THIS MOTOR CLUB MEMBERSHIP IN ORDER TO PURCHASE, LEASE OR OBTAIN FINANCING FOR the Vehicle listed above. **You** should read this **Membership** carefully. It contains the entire **Membership** between **You** and **Us**. It takes precedence over any other written or oral statements made to **You** with respect to this **Membership**. Any modification(s), alteration(s) or change(s) to the preprinted terms and conditions is/are invalid and of no force or effect. **You** acknowledge **Your** understanding of and agree to the **Dispute Resolution/Arbitration Agreement and Class Action Waiver** section in this **Membership**. Refer to the Dispute Resolution/Arbitration Agreement and Class Action Waiver section for opt-out instructions. This **Membership** is based on information **You** provided to **Us** in this **Schedule**.

Telephone Authorization

10/20/2021

**Member Signature**      Membership Effective Date

Trinity Auto Services LLC

**Motor Club Signature**      Dealer (Club Agent) Representative Signature

**AUTHORIZATION IS REQUIRED FROM THE MOTOR CLUB PRIOR TO ANY AND ALL REPAIRS OR REPLACEMENT OF COVERED COMPONENTS.**
**FOR ROADSIDE ASSISTANCE OR TO FILE A CLAIM CALL: TOLL FREE [844-241-5518]**

DLP-SUPERIOR-MC

REV: 12/20

charged with illegally leaving the scene of an accident, (c) charged with no or improper license or permit, or (d) charged with operating overweight or over length vehicle. All service must be performed by a licensed repair facility.

14. **CLAIMS:** You may call the **TOLL-FREE NUMBER (844) 241-5518 or** send a written request for benefit, providing the **Membership** number, and include paid receipts. The **Club** may require completion of claim report or any reasonable proof of claim legitimacy such as receipts, repair statements, accident reports, medical reports, toxicology reports, or affidavits. All claims and proofs of loss must be submitted within ninety (90) days of incident giving rise to claim. Mail claims directly to **Club: Auto Knight Motor Club,** Inc., [10751 Deerwood Park Blvd., Suite 200, Jacksonville, FL 32256].

15. **AGENT:** The company or individual authorized to sell **Memberships** is authorized to receive fee refunds to **Member's** credit. Other than the issuance of this **Membership,** no statements or assurances made by the agent or agent's employees shall be binding upon **Club.**

16. **CHANGES:** These benefits, limitations and exceptions pertain to **Memberships** issued after the date hereof. **Club** may change benefits, limitations and exceptions upon notice to **Member.**

## DEFINITIONS

1. **Club ("We", "Us", "Our"):** Auto Knight Motor Club, Inc. [10751 Deerwood Park Blvd., Ste. 200, Jacksonville, FL 32256 (844) 241-5518)].
2. **Membership:** This **Membership** is a contract between **You** and **Us.**
3. **Seller(Club Agent):** The retail seller of this **Membership** to **You** for the **Covered Vehicle** described on the **Schedule Page** under **Seller** Information.
4. **Pre-Existing Conditions:** A condition that occurred before **Your** purchase of this **Membership** that would have been obvious and apparent if the **Vehicle** had been inspected at the time of purchase.
5. **Repairs or Services:** Refers to those types of services as described in this **Membership.**
6. **Vehicle** or **Covered Vehicle:** The **Vehicle** described on the **Schedule Page** under **Vehicle** Information. Off-road, all-terrain and human-powered machines are specifically excluded. Fleet vehicles are excluded if not personally operated by **You.** All commercial vehicles and vehicles operated for hire are excluded.
7. **Member ("You" or "Your"):** The purchaser of this **Membership** identified on the **Schedule Page** under **Member** Information.

## CANCELLATION AND TRANSFER OF THIS MEMBERSHIP

**You** may request a cancellation of this **Membership** at any time by emailing cancellations@dealerloyaltyprotection.com or visiting www.dealerloyaltyprotection.com and selecting **REQUEST CANCELLATION** then completing the required fields. A full refund will be issued if within thirty (30) days from the **Membership** Effective Date, less any claims paid. After thirty (30) days, only a pro-rated amount will be issued less a seventy-five-dollar ($75.00) cancellation processing fee to the **Club.** No refund will be due if **We** cancel this **Membership** for cause or have paid any **Membership** benefits. If **Your Membership** is cancelled for cause, **We** will mail written notice to **You** at the address provided in the Schedule of this **Membership.** The notice will state the effective date of the cancellation and the reason for the cancellation. **We** may **ONLY** cancel this **Membership** under the following conditions: 1) If the premium for this **Membership** has not been remitted to **Us** within sixty (60) days of the **Membership** Effective Date listed in the Schedule of this **Membership;** or 2) A material misrepresentation by **You** to the **Seller** or **Club. Your** rights hereunder may not be transferred by **You** to any other party. The **Club** may transfer its obligations under this **Membership** to a successor entity.

## DISPUTE RESOLUTION/ARBITRATION
## AGREEMENT AND CLASS ACTION WAIVER

**PLEASE READ THIS DISPUTE RESOLUTION/ARBITRATION AGREEMENT AND CLASS ACTION WAIVER, INCLUDING THE OPT-OUT PROVISION, CAREFULLY TO**